Mattie NORMAN, Clara Marshall, Individually and on Behalf of All Others
Similarly Situated, Plaintiffs–Appellants,

v.

The HOUSING AUTHORITY OF the
CITY OF MONTGOMERY, et al.,
Defendants–Appellees.

No. 87–7763.

United States Court of Appeals,
Eleventh Circuit.

Feb. 1, 1988.

der entitled the tenants to approximately $1 million in damages for previous overcharges, to be paid over a period of years rather than in a lump sum, and a reduction in gas utility allowances for twenty-one months after the consent order.

Following the district court's entry of the consent order and judgment the tenants filed a motion for trial counsel and fee counsel fees. The court awarded fees on September 26, 1986. In the September 26 order the court did not reserve any issues for further consideration and did not address the tenants' request for reasonable fees for their fee counsel.

On October 6, 1986 the tenants moved for reconsideration of the September 26 order. The motion for reconsideration included a paragraph noting the court's failure to address the issue of fee counsel fees and requesting that such fees be awarded. The court denied the tenants' motion for reconsideration on October 9, 1986 but requested further briefing and documentation on the fee counsel fees issue. On November 6, the tenants filed a notice of appeal of the district court's October 9 order. On November 10, the district court awarded the tenants' fee counsel $1,046.32 as a reasonable fee. The November 10 order, which left no issues pending in the case, was not appealed.

Vanzetta Penn McPherson, Montgomery, Ala., for plaintiffs-appellants.

Michael S. Jackson, Montgomery, Ala., for defendants-appellees.

Before FAY, Circuit Judge, HENDERSON *, Senior Circuit Judge, and FORRESTER **, District Judge.

FORRESTER, District Judge:

In this case we are asked to consider whether this court has lost jurisdiction to entertain an appeal of an award of attorney's fees and, also, we are asked to review the amount of that award.

## I.

### HISTORY OF THE APPEAL

This class action challenging the Housing Authority's practice of overcharging public housing tenants for rent by failing to provide adequate utility allowances for gas and electric service was resolved by a consent order and judgment. The consent or-

## II.

### DISCUSSION OF JURISDICTION

A threshold question is whether this court has jurisdiction of the appeal in this case, since the district court's October 9 order is not a final order under the express terms of 28 U.S.C. § 1291 or *Federal Rule of Civil Procedure* 54(b) and is not an appealable interlocutory order under 28 U.S.C. § 1292(b).[1] Even if the October 9

---

* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable J. Owen Forrester, U.S. District Judge for the Northern District of Georgia, sitting by designation.

1. It could be argued that the October 9 order is a final appealable order because the only issues

left unresolved by that order, entitlement and amount of fee counsel fees, are collateral to trial counsel fees · issues. *See White v. New Hampshire Department of Employment Security*, 455 U.S. 445, 451, 102 S.Ct. 1162, 1166, 71 L.Ed. 2d 325 (1982) (attorney's fees issues are collateral to the merits of civil rights actions); *McQurter v. City of Atlanta*, 724 F.2d 881, 882 (11th Cir.1984) (district court order resolving all

order was not final, however, this court's previous decisions establish that the district court's subsequent order terminating the litigation cured any prematurity in the appeal. *See Bank South Leasing, Inc. v. Williams*, 778 F.2d 704 (11th Cir.1985). In *Bank South*, this court held that a notice of appeal filed after judgment was rendered but before the attorney's fees issue was decided was premature, but found that a subsequent order deciding the attorney's fees issue cured the premature notice. *Id.* at 705, citing *Rivers v. Washington County Board of Education*, 770 F.2d 1010, 1011 (11th Cir.1985); *Martin v. Campbell*, 692 F.2d 112, 114 (11th Cir.1982).

■ This court has noted that the holding in *Bank South* "may be incorrect," *Robinson v. Tanner*, 798 F.2d 1378, 1384 (11th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 1979, 95 L.Ed.2d 819 (1987), because the finding of appellate jurisdiction in *Bank South* was not necessarily compelled by holdings of previous cases. Those previous cases held that a premature notice of appeal from an order that is otherwise immediately appealable is cured by a subsequent final judgment, but that a premature notice of appeal from an interlocutory order that is not immediately appealable is not cured by a subsequent final judgment. *Compare Jetco Electronic Industries v. Gardiner*, 473 F.2d 1228 (5th Cir.1973), *with United States v. Taylor*, 632 F.2d 530 (5th Cir.1980). *See also Robinson*, 798 F.2d at 1385 (summarizing the holdings of *Jetco* and *Taylor*). However, the court in *Robinson* also noted that the finding of appellate jurisdiction in *Bank South* was also not necessarily foreclosed by the previous cases since "the rules governing attorney's fees case are *sui generis* in many respects." 798 F.2d at 1384. *Bank South*, as the only case applying the jurisdictional principles of *Jetco* and *Taylor* in the attorney's fees situation, is controlling law until overruled by an en banc

court, *see Bonner v. City v. Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), and this court therefore does have jurisdiction of this appeal. *Accord, Alcorn County v. U.S. Interstate Supplies, Inc.*, 731 F.2d 1160 (5th Cir.1984).

## III.

## ATTORNEY'S FEES

### A. THE RECORD BELOW.

This case began as a class action with Mrs. Norman representing about 3,000 present and future tenants of the Montgomery Housing Authority in seeking relief for utility allowances in the computation of rents charged by the authority. It is represented that under federal law there is a limit on the total amount of money which a tenant must pay for both rent and utilities. The regulations governing this computation changed in the early 1980's, as did utility charges, and yet the Authority had done nothing to make adjustments in rents as of the filing of this lawsuit.

Counsel for the class were two attorneys from the Alabama Legal Services Corporation. For some time that public law agency had received complaints from tenants. Finally, Mrs. Norman determined to bring suit. The Housing Authority's attorney learned of the possibility that suit was contemplated and offered to settle the matter. The record does not reflect the relationship of this offer to the adjustments which were finally obtained.

The Legal Services attorneys decided to file suit rather than continue to negotiate in part because they believed that it would be easier to get HUD's concurrence if litigation were pending. The record does not reflect the basis for this assessment. HUD was not a party to the lawsuit. The case proceeded through very limited discovery, a fully-contested class certification hearing, a motion for partial summary judgment

---

issues except attorney's fees under section 1988 is final and appealable). *Cf. Bank South Leasing, Inc. v. Williams*, 769 F.2d 1497 (11th Cir. 1985) (order leaving attorney's fees issues unresolved not final because attorney's fees "an integral part of the merits"); *Alcorn County v. U.S.*

*Interstate Supplies, Inc.*, 731 F.2d 1160 (5th Cir. 1984) (same). In light of the court's conclusion that any prematurity in the appeal has been cured, the question of finality need not be reached.

filed by the Authority which was successful in having the case dismissed as to six parties and as to one theory, a consent decree, a motion by the Authority to avoid the consent decree, and finally the award of attorney's fees.

A number of similar suits had previously been filed in other districts and several had been resolved successfully by the time this action was brought. The Legal Services attorneys apparently had access to some of the pleadings and discovery materials from the other suits. Additionally, they had access to an expert who had been used in other suits. There was very little question about the class's entitlement to some relief. There were questions concerning the timing and dimension of that relief.

Plaintiffs/appellants contend that the economic value of the consent decree could be between $1.5 and $2 million, in addition to obtaining proper future computation of utility allowances. The initial attorney's fees request was for 394 hours at $125 an hour for a total of $49,250 enhanced by a multiple of two for a net total of $98,500. The district court awarded $11,855. Appellants contend that the district court calculated an hourly rate which did not reflect the special skill of counsel and improperly used as evidence of market rate the charges of members of old-line well-established general law firms in the City of Montgomery. With reference to the rates utilized by the district court, appellants contend that the court erred in reducing the hourly rate to a "bookkeeper" rate for some of the time and that the use of a bookkeeper rate does not account for the legal and analytical skills required to apply the statute to the facts.

Appellants generally contend with reference to deductions made by the court from the amount of hours claimed that the court failed to provide a concise but clear explanation of its reasons, and that the deduction of the hours spent for settlement and duplication of effort by attorneys was improper. Appellants further contend that the court erred in not conducting an evidentiary hearing to resolve disputes of fact concerning the reasonableness of the rates and hours. Finally, appellants fault the district court for not enhancing the award because of the contingency of recovery, the quality of representation provided and delay in the receipt of attorney's fees.

The district court concluded that lawyers in "old-line" firms earn between $65 and $90 an hour in the Montgomery area and that $75 an hour was a reasonable rate for the two attorneys involved in this case. Further, the district court determined through its own experience that $35 per hour was a reasonable rate for bookkeeping services. The court further reasoned that the case necessarily involved a tremendous amount of bookkeeping, because of the number of class members, and established thirty of the hours expended in discovery efforts as being primarily bookkeeping work.

The court deducted all time claimed for post-settlement administration as it found no authority for allowing such an award. The court found that appellants' counsel's claim for eighty-four hours for the taking of two depositions and the preparation for one planned deposition was excessive by twenty-eight hours. The court deducted twenty hours claimed by appellants' attorneys for work done during the pleading stage, finding that there was duplication of effort by the two attorneys.

Appellants' attorneys contended that they spent ninety-seven hours in reaching a settlement. The court considered that amount totally excessive and allowed twenty hours.

In addition to these findings, the court noted that the appellants' attorneys had pleadings in similar cases to assist them in drafting, that the attorneys filed one unnecessary motion to compel against Alabama Power Company, and that appellants expanded the case by suing Board members in their individual capacities and filing a Brooke Amendment claim under 42 U.S.C. § 1437a. The court found that substantial results were obtained even if the lawsuit was unnecessary to obtain them, but it stated that it did not enhance the fees because of the possibility of duplica-

tion of efforts and the possibility of improperly charged hours.

In support of their contention that $125 per hour was a reasonable rate, appellants' attorneys offered four affidavits by four Montgomery attorneys, Segall, Boyd, McPhillips and Harris. All had represented plaintiffs in civil rights cases. Their experience in the area ranged from six to fifteen years. Segall stated that $125 an hour was higher than his customary charge, but he thought that it was reasonable in this case. Further, he felt the time spent was reasonable. Boyd stated that Ivie and Varley, the two Legal Services attorneys, had reputations as master attorneys in complex civil rights litigation. She considered the time spent reasonable and necessary considering the importance of the result. Further, Ms. Boyd stated that she was familiar with awards and negotiated settlements in other cases and that those ranged between $100 and $125 an hour. McPhillips said that he felt that all hours expended were reasonable and stated that attorneys in the area of Varley and Ivie's experience charged between $100 and $125 per hour. Harris stated that he felt that the hours claimed were reasonable for the relief obtained and further stated that he thought $125 an hour was a reasonable fee based on his knowledge for similar work in the area and considering the skills shown.

By affidavit Varley and Ivie established that they had eight and ten years' experience, respectively, and that both had had numerous trials and appeals in civil rights cases. Varley had experience as a clerk to a federal judge and was a supervising attorney for the Montgomery office of the Alabama Legal Services Corporation. Ms. Ivie stated that she specialized in public housing cases. Neither attorney had any prior experience or expertise in the substantive laws at issue in the case.

Countering the affidavits offered by the appellants were three affidavits tendered by the Authority. Counsel for the Montgomery Housing Authority stated that he had discussed fees with other lawyers and had determined that even senior partners in Montgomery firms do not charge $125 an hour. Further, he stated his opinion that the hours charged were unreasonable as he expended only 166–¾ hours in the case, of which 100 were spent in working out the settlement. Messrs. Garrett and Novak appeared through affidavit and stated that they had been involved in numerous cases brought under 42 U.S.C. § 1983 and it was their opinion that $65 to $70 per hour was the prevailing rate in civil rights cases in federal court in the Montgomery area. Novak stated that he had discussed the case with the Authority's lawyer and based on that discussion reached the opinion that the hours expended by appellants' counsel were excessive.

In the early stages of the litigation over attorney's fees the appellants' counsel submitted a claim based on broad categories of work done. Late in the proceedings a more detailed reply affidavit was submitted which seemingly escaped the district court's attention. Among other things, that affidavit shows that class counsel spent only ten hours in investigating their clients' complaint, doing legal research, and preparing and drafting the complaint. No duplicate time is claimed by either attorney in the pleadings stage for any activity. Within the category of time claimed for trial preparation and court appearances, there is only three-quarters of an hour of duplication claimed. Within the discovery category, the claim by class counsel for the conduct and preparation of depositions and expert consultation is about twenty-two hours per lawyer. Of this time only twelve and one-quarter hours is claimed by both counsel for the same activity. In the area of negotiation, the affidavit shows that only time for Ms. Ivie was claimed for negotiations early in the case and only time for Mr. Varley was claimed for negotiations leading to the filing of the consent decree.

## B. LEGAL FRAMEWORK

The Supreme Court, after some rumination in five opinions, *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *River-*

*side v. Rivera*, 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986); *Pennsylvania v. Delaware Valley Citizens' Council*, 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) (*Delaware Valley Citizens' Council I*); and *Pennsylvania v. Delaware Valley Citizens' Council*, —— U.S. ——, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987) (*Delaware Valley Citizens' Council II*), has declared that the lodestar as calculated in *Hensley* presumptively includes all of the twelve factors derived from the ABA Code of Professional Responsibility DR 2-106 (1980) and adopted in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), except on rare occasions the factor of results obtained and, perhaps, enhancement for contingency. *See Delaware Valley Citizens' Council I*, 106 S.Ct. at 3098-3100. Justice White's decision in *Delaware Valley Citizens' Council I* best presents the evolution of the Court's thought and the relevant policy concerns. 106 S.Ct. at 3096-99. The Supreme Court seems to feel that the twelve factors approach of *Johnson* creates a theoretical attorney's fee based on subjective evaluations. *See Delaware Valley Citizens' Council I*, 106 S.Ct. at 3096 ("Setting attorney's fees by reference to a series of sometimes subjective factors placed unlimited discretion in trial judges and produced disparate results"). The Supreme Court elected the lodestar approach because it produces a more objective estimate and ought to be a better assurance of more even results.

The decisions of this court have mirrored the evolving standards of the Supreme Court. In *Popham v. City of Kennesaw*, 820 F.2d 1570, 1578-80 (11th Cir.1987), our entire analysis was under the *Hensley* rubric. The same was true in *Garner v. Wal-Mart*, 807 F.2d 1536, 1539-40 (11th Cir.1987). *See also Mayson v. Pierce*, 806 F.2d 1556 (11th Cir.1987); *Watford v. Heckler*, 765 F.2d 1562 (11th Cir.1985); and *Goodson v. City of Atlanta*, 763 F.2d 1381 (1985). In *NAACP v. City of Evergreen*, 812 F.2d 1332 (11th Cir.1987) we suggested, however, that *Johnson* factors might be considered in terms of their influence on the lodestar amount. *Id.* at 1336, 1337 n. 6. In the present case, we further refine our

views of the analysis required under these recent Supreme Court decisions.

### 1. *Reasonable Hourly Rate.*

Under *Hensley*, the starting point in any determination for an objective estimate of the value of a lawyer's services is to multiply hours reasonably expended by a reasonable hourly rate. 461 U.S. at 433.

A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation. *Blum v. Stenson*, 465 U.S. at 895-96 n. 11, 104 S.Ct. at 1547 n. 11. *Accord, Gaines v. Dougherty County Board of Education*, 775 F.2d 1565, 1571 (11th Cir.1985). The applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates. *NAACP v. City of Evergreen*, 812 F.2d at 1338. Satisfactory evidence at a minimum is more than the affidavit of the attorney performing the work. *Blum*, 465 U.S. at 896 n. 11, 104 S.Ct. at 1547 n. 11. It should also be noted that in line with the goal of obtaining objectivity, satisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits. Testimony that a given fee is reasonable is therefore unsatisfactory evidence of market rate. *See Hensley*, 461 U.S. at 439 n. 15, 103 S.Ct. at 1167 n. 15. Evidence of rates may be adduced through direct evidence of charges by lawyers under similar circumstances or by opinion evidence. The weight to be given to opinion evidence of course will be affected by the detail contained in the testimony on matters such as similarity of skill, reputation, experience, similarity of case and client, and breadth of the sample of which the expert has knowledge.

We still believe that at least some of the *Johnson* factors have utility in establishing the hourly rate. In evaluating comparability of the market rates being attested to, the district court may wish to consider any of the *Johnson* factors to the extent that they suggest that comparables offered may not be relevant to the issues before the court or as they may affect the weight to

be given to the comparables being offered the court. For example, it is not unusual for a law firm representing a governmental entity on an ongoing basis to charge substantially lower hourly rates than would be charged for representation in a single case. Where the facts show this, the fee charged by a government attorney is simply irrelevant to the establishment of a reasonable hourly rate for a plaintiff's civil rights lawyer.

The court recognizes that few practitioners who regularly defend the poor and disadvantaged have the opportunity to bill and collect on an hourly basis. Accordingly, it may be virtually impossible to establish a prevailing market rate for such services. Therefore, fee counsel in such cases must seek out close cohorts to provide a measure. Major civil rights class action matters might be akin to plaintiff's class actions in antitrust and securities matters; cohorts might be found in suits brought by professional, business or neighborhood associations against government entities. Single plaintiff civil rights cases, of course, find analogies in employment discrimination cases and in other disputes where the representation is not the product of an ongoing relationship between the attorney and the client.

As Judge Clark recognized in his dissenting opinion in *Mayson*, 806 F.2d at 1561, the court is seldom presented with one figure as a prevailing market rate. More typically, the fee applicant asks for rates approximating the highest charged in the community, whereas the fee opponent generally submits evidence of the lowest rate charged in any part of the community. This is no doubt in part attributable to our adversarial system. Further, as noted in *Blum*, 465 U.S. at 895 n. 11, 104 S.Ct. at 1547 n. 11, fee rates vary from lawyer to lawyer, case to case, and client to client. To say that the prevailing market rate is the figure at either extreme or at a precise point between the extremes is a divination that cannot be made with the same certainty as ascertaining the value of a futures contract for pork bellies or wheat on a given day. Once a district court has winnowed down the comparables offered by the parties to those which are relevant to the facts and circumstances of the case, the client, and the attorney before it, this court would still expect that there might be a range in prevailing market rates. That range is accounted for almost always by experience, skill and reputation. A closer analysis suggests that reputation and experience are usually only proxies for skill, which in a rational economic environment is the ultimate determinant of compensation level.

■ No two lawyers possess the same skills, and no lawyer always performs at the same level of skill. Accordingly, The parties ought to provide the court with a range of market rates for lawyers of different skill levels (perhaps as measured by quality and quantity of experience) involved in similar cases with similar clients, so that the court may interpolate the prevailing market rate based on an assessment of the skill demonstrated in the case at bar.

Legal skill is a several faceted concept and there is no assurance that a level of attainment in one facet means that the practitioner will or has similarly attained in all facets. Legal skill may be a function of experience, but that is not always the case. Further, legal skill has no intrinsic value unless it is used to further the client's interest, which is to obtain a just result quickly and economically.

At the beginning of a case skill is manifest in the kind of judgment shown in case assessment. This is evidenced by efforts where feasible to seek dispute resolution without litigation, or, if litigation appears necessary, by the decisions on theories to be included and parties to be sued.

From the beginning and throughout a case, expertise in negotiations and tactics often advances a client's cause more quickly and effectively than the sustained and methodical trench warfare of the classical litigation model.

Throughout, and particularly if litigation is begun, the word "skill" incorporates the notions of organization and efficiency. An attorney of great skill organizes his

thoughts, his work, and his presentation in a logical and orderly way without lost motion or false starts so that each move builds upon the last to the achievement of the goal. Organization means that discovery devices and motions are thought out and not utilized in a random and erratic way or for the mere purpose of going through established routines. Efficiency means doing well just what ought to be done and doing it in a minimum of time.

The underpinning for these facets of legal skill is knowledge, knowledge of trial practice and knowledge of the substantive law. A lawyer who has to educate himself generally in either or both of these two areas may ultimately be as effective as a specialist, but he has no right to expect to be reimbursed at the same rate as a lawyer who begins his preparation with the finer points raised by the particular case.

The final attribute of legal skill is perhaps the one the general public thinks of first—persuasiveness. Some clients prevail only because of the compelling merit of their case and in spite of their attorney's efforts to communicate a position. In other cases, usually close ones, the better advocate may actually sway the outcome on occasion. In the usual case, both the merits and the advocacy control the outcome. The measure of good advocacy is that the client's best positions are advanced clearly, crisply and compellingly.

In summary, ordinarily there are no quotations for the prevailing market rate for a given attorney's services. Instead, the best information available to the court is usually a range of fees set by the market place, with the variants best explained by reference to an attorney's demonstrated skill. It is the job of the district court in a given case to interpolate the reasonable rate based on an analysis of the skills enumerated above which were exhibited by the attorney in the case at bar, remembering that the highest market rates are not theoretical rates for the perfect lawyer and that the lowest market rates are being earned not by imbeciles but by men and women who are proud to say they are attorneys, who are good enough to earn a livelihood

from the profession, and who are at least well enough qualified to be admitted to the bar.

## 2. *Hours Reasonably Expended.*

■ The next step in the computation of the lodestar is the ascertainment of reasonable hours. *Hensley* teaches that "excessive, redundant or otherwise unnecessary" hours should be excluded from the amount claimed. 461 U.S. at 434, 103 S.Ct. at 1939–40. In other words, the Supreme Court requires fee applicants to exercise "billing judgment." *Id.* at 437, 103 S.Ct. at 1941. This must necessarily mean that the hours excluded are those that would be unreasonable to bill to a client and therefore to one's adversary *irrespective of the skill, reputation or experience of counsel. Id.* at 434, 103 S.Ct. at 1939. If it were otherwise, an inexperienced or unskillful attorney would face a double penalty. First, his hourly rate would be lowered and second, his time reduced.

■ Excluding excessive or otherwise unnecessary hours under the rubric of "billing judgment" means that a lawyer may not be compensated for hours spent on activities for which he would not bill a client of means who was seriously intent on vindicating similar rights, recognizing that in the private sector the economically rational person engages in some cost benefit analysis. In the final analysis, exclusions for excessive or unnecessary work on given tasks must be left to the discretion of the district court. The district court will, however, no doubt be benefited by evidence of prevailing views among practitioners in the area on such subjects. Generalized statements that the time spent was reasonable or unreasonable of course are not particularly helpful and not entitled to much weight. *See Hensley*, 461 U.S. at 439 n. 15, 103 S.Ct. at 1942 n. 15. As the district court must be reasonably precise in excluding hours thought to be unreasonable or unnecessary, so should be the objections and proof from fee opponents.

■ In making adjustments to hours claimed, the district court is charged with deducting for redundant hours. Redun-

dant hours generally occur where more than one attorney represents a client. There is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer. *Johnson v. University College of University of Alabama in Birmingham*, 706 F.2d 1205, 1208 (11th Cir.1983), *cert. denied*, 464 U.S. 994, 104 S.Ct. 489, 78 L.Ed.2d 684 (1983).

■ Finally, in determining reasonable hours the district court must deduct time spent on discrete and unsuccessful claims. *Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940.

### 3. *Adjustments of the Lodestar.*

■ After the lodestar is determined by multiplication of a reasonable hourly rate times hours reasonably expended, the court must next consider the necessity of an adjustment for results obtained. If the result was excellent, then the court should compensate for all hours reasonably expended. *Popham*, 820 F.2d at 1578. If the result was partial or limited success, then the lodestar must be reduced to an amount that is not excessive. *Hensley*, 461 U.S. at 436–37, 103 S.Ct. at 1941. In doing so, the court may attempt to identify specific hours spent in unsuccessful claims or it may simply reduce the award by some proportion. *Id.* A reduction is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole. *Id.* at 435, 440, 103 S.Ct. at 1943. Where all theories derive from a common core of operative facts, the focus should be on the significance of overall results as a function of total reasonable hours. *Popham*, 820 F.2d at 1578. It is improper to make the reduction based on a simple ratio of successful issues to issues raised. *Hensley*, 461 U.S. at 435 n. 11, 103 S.Ct. at 1940 n. 11 *Popham*, 820 F.2d at 1579. The vindication of a constitutional right is important even if only a small amount of money is involved. *Popham*, 820 F.2d at 1580. Further, vindication of class-wide rights are generally more signif-

icant than relief granted for an isolated violation of constitutional rights. *Id.*

■ If the results obtained were exceptional, then some enhancement of the lodestar might be called for. *Delaware Valley Citizens' Council I*, 106 S.Ct. at 3098. Exceptional results are results that are out of the ordinary, unusual or rare. Ordinarily, results are not exceptional merely because of the nature of the right vindicated or the amount recovered. The law is usually faithful to its teachings, and so an outcome that is not unexpected in the context of extant substantive law will not ordinarily be exceptional.

■ Even if the results obtained are exceptional, no enhancement is permissible unless there is specific evidence in the record to show that the quality of representation was superior to that which one would reasonably expect in light of the rates claimed. *Blum*, 465 U.S. at 899, 104 S.Ct. at 1549. This is because the reasonable hourly rate already should reflect the skill demonstrated by the advocate. *Id.; Delaware Valley Citizens' Council I*, 106 S.Ct. at 3098.

■ The district court must also determine whether the fee arrangement was contingent. Five justices in *Delaware Valley Citizens' Council II* indicated that in the rare case enhancement may be appropriate if there is a risk of non-recovery of a fee in the case. 107 S.Ct. at 3089 (O'Connor, J., concurring); *id.* at 3091 (Blackmun, J., dissenting with Brennan, Marshall and Stevens, JJ.). Such enhancement will be awarded only where it is shown that such enhancement is necessary to assure the availability of counsel. 107 S.Ct. at 3091 (O'Connor, J., concurring).

■ Finally, the court must consider the issue of delay in the receipt of payment by counsel for the prevailing party. In this circuit, where there is a delay the court should take into account the time value of money and the effects of inflation and generally award compensation at current rates rather than at historic rates. *Gaines*, 775 F.2d at 1572 n. 14; *Johnson v. University College of Birmingham*, 706 F.2d at 1211.

#### 4. *Procedure.*

No discussion of the present state of the law on the issue of awards of attorney's fees would be complete without some reference to the procedures required and the power of the trial court. As the Supreme Court said in *Hensley,* "[a] request for attorney's fees should not result in a second major litigation." 461 U.S. at 437, 103 S.Ct. at 1941. The fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates. *Id.* As indicated earlier, fee counsel bears the burden in the first instance of supplying the court with specific and detailed evidence from which the court can determine the reasonable hourly rate. Further, fee counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity. *Hensley,* 461 U.S. at 437 n. 12, 103 S.Ct. at 1941 n. 12; *NAACP v. City of Evergreen,* 812 F.2d at 1337. A well-prepared fee petition also would include a summary, grouping the time entries by the nature of the activity or stage of the case.

Courts are often faced with inadequate fee applications or with claims for hours or fee rates which seem excessive. Sometimes, as here, these are supported by opinions as to reasonableness. For decades the law in this circuit has been that:

> The court, either trial or appellate, is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value.

*Campbell v. Green,* 112 F.2d 143, 144 (5th Cir.1940) (Sibley, J.). *Accord, NAACP v. City of Evergreen,* 812 F.2d at 1334; *King v. McCord,* 707 F.2d 466, 468 (11th Cir. 1983) (*King v. McCord II*); *Mesa Petroleum Company v. Coniglio,* 629 F.2d 1022, 1030 (5th Cir.1980); *Brown v. Culpepper,* 561 F.2d 1177, 1177–78 (5th Cir.1977); *Davis v. Board of School Commissioners of Mobile County,* 526 F.2d 865, 868 (5th Cir.1976). Therefore, where the time or fees claimed seem expanded or there is a lack of documentation or testimonial support the court may make the award on its own experience. *Davis,* 526 F.2d at 868. Where documentation is inadequate, the district court is not relieved of its obligation to award a reasonable fee, but the district court traditionally has had the power to make such an award without the need of further pleadings or an evidentiary hearing. *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939. *Gaines v. Dougherty County,* 775 F.2d at 1571; *Carr v. Blazer Financial Services, Inc.,* 598 F.2d 1368, 1371 (5th Cir.1979). Likewise, no additional evidentiary hearing or pleadings are required where fee counsel fails to provide evidence on some factor which it contends the court ought to take into account. *Carr,* 598 F.2d at 1371; *Jones v. Central Soya Company,* 748 F.2d 586, 593–94 (11th Cir.1984).[2] It is perfectly proper to award attorney's fees based solely on affidavits in the record. *Mesa Petroleum Company,* 629 F.2d at 1030; *Accord, Mendoza v. City of Miami,* 483 F.2d 430, 431 (5th Cir.1973).

Occasionally, evidentiary hearings are necessary. In *King v. McCord,* 621 F.2d 205 (5th Cir.1980) (*King v. McCord I*), this court's predecessor held that where an evidentiary hearing was requested, where there were disputes of fact, and where the written record was not sufficiently clear to allow the trial court to resolve the disputes of fact, it was an abuse of discretion to make an award without holding an evidentiary hearing. This court followed that decision in *Marable v. Walker,* 704 F.2d 1219 (11th Cir.1983) and in other cases. *King v. McCord I* relied on *In Re: First*

---

**2.** *But see NAACP v. City of Evergreen,* 812 F.2d at 1338, where on remand this court directed the district court to require fee counsel to supplement its inadequate fee application. Giving the petitioner a second chance in that case was appropriate because on remand a number of issues would be reconsidered by the district court. Ordinarily, of course, the district court should not depart from its position of neutrality to coach either party on the proper preparation of their pleadings.

*Colonial Corp.*, 544 F.2d 1291 (5th Cir.), *cert. denied*, 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977), in which an intervenor sought attorney's fees in a bankruptcy case. *First Colonial* relied on *Ross v. Bernhard*, 396 U.S. 531, 541 n. 15, 90 S.Ct. 733, 740 n. 15, 24 L.Ed.2d 729 (1970), which dealt generally with intervenors' rights to jury trials on the merits. These cases should not be read to suggest that an evidentiary hearing is necessary every time the written pleadings present a dispute of opinions on matters as to which the courts possess expertise. Such matters might include the reasonableness of the fee, the reasonableness of the hours and the significance of outcome. Certainly, however, where there is a dispute of material historical fact such as whether or not a case could have been settled without litigation or whether attorneys were duplicating each other's work, an evidentiary hearing is required.

Although the district court has wide discretion in exercising its judgment on the appropriate fee based on its own expertise, that discretion is not without limits. A conclusory statement that a fee is reasonable in light of the success obtained is generally insufficient. *Hensley* 461 U.S. at 439 n. 15, 103 S.Ct. at 1942 n. 15. The court's order on attorney's fees must allow meaningful review—the district court must articulate the decisions it made, give principled reasons for those decisions, and show its calculation. *Adams v. Mathis*, 752 F.2d 553, 554 (11th Cir.1985). If the court disallows hours, it must explain which hours are disallowed and show why an award of these hours would be improper. *Hill v. Seaboard Coast Line R. Co.*, 767 F.2d 771, 775 (11th Cir.1985); *Fitzpatrick v. IRS*, 665 F.2d 327, 332–33 (11th Cir.1982).

Occasionally a court will judicially notice some fact which is ordinarily not thought to be within its expertise. For example, here the court judicially noticed that the rate for bookkeepers in the Montgomery area was $35 per hour. It is proper for a court to judicially notice matters outside of the record if they are generally known within the territorial jurisdiction of the trial court or capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed.R.Evid. 201(b). Where the court does take such judicial notice on its own motion, a party is entitled to be heard on the matter if he so requests. Fed.R. Evid. 201(e). If the court does not advise the parties prior to the taking of the notice in its order, then it is obliged to hear a party on the matter if a request is seasonably made. Absent a request under Rule 201(e) for a hearing before the district court, the fact that the court took judicial notice of a fact or the tenor of the notice taken is not grounds for later appeal. *Cf. NAACP v. City of Evergreen*, 812 F.2d at 1338.

## IV.

## APPLICATION

### A. HOURLY RATE.

In this case, the affidavits submitted in support of the fee application and the affidavits submitted in opposition thereto are by and large inadequate, and so the district court was correct in determining that it must rely on its own expertise in determining a reasonable hourly rate. The bare statements that the hourly rate of $125 was reasonable as contained in the affidavits of Siegel, McPhillips and Harris are barren of detailed bases or expert analyses. Save for the affidavit of McPhillips the fee applicants' affiants attest only to the reasonableness of the requested fee with hardly a mention of prevailing market rates. This sort of affidavit might properly be characterized by a reviewing court as one given out of courtesy, but it provides little or no evidentiary support for an award.

The affidavits of Siegel and McPhillips both show that prevailing market rates are not necessarily as high as the $125 per hour figure requested. The affidavit of Ms. Boyd is based on court awards and negotiated settlements in other cases. Under *Johnson* such information would be relevant but under the lodestar approach it is not. For example, there is no assurance

that the attorneys in those cases possessed similar skill, experience or reputation or that the case or clients were similar to the one at bar. Further, to the extent that fee applicants rely on an award made in the Northern District of Alabama, there is no evidence that the prevailing market rates in that area are the same as in Montgomery.

 The affidavits offered in opposition are also deficient. Messrs. Garrett and Novak do not attest that they have charged $65 or $70 an hour in civil rights cases. Further, their affidavits do not show that the rates to which they attest were charged in similar cases for similar clients by lawyers of similar skill, experience and reputation.

 The district court selected $75 an hour as being a rate charged by old-line Montgomery firms. The case must be remanded to the district court to reconsider the matter because it has applied the wrong standard in the selection of the rate. While it is no doubt true that law firms of established lineage and reputation can charge substantial fees, that is not really the question. If the old-line firms are primarily engaged in insurance defense work, for example, their fees will probably be low—billing rates for this kind of work seem almost universally below the average. Further, long-standing relationships with business clients may cause the rates to be depressed. Further, the court did not address the skill and experience of the practitioner that it believed would bill at $75 an hour as compared with the skill and experience of class counsel in this case.

In sum, because of the inadequacy of the evidentiary record before it, the district court was free to rely on its own experience. However, the district court failed to demonstrate that its standard of comparison was the prevailing market rate for lawyers similar to class counsel having similar client relationships and similar types of issues.

## B. REASONABLE HOURS.

 Likewise, the district court's determination of hours reasonably expended must be reversed as clearly erroneous. Its errors no doubt occurred because it focused upon fee applicants' first incomplete enumeration of time expended and overlooked the more detailed reply affidavit. Upon reconsideration the district court will note that there was virtually no duplication of effort by the two attorneys and so it will no doubt agree that the amount of hours it deducted for duplication was incorrect.

The court deducted time for post-consent decree administration. The law seeks to compensate attorneys for work reasonably done actually to secure for clients the benefits to which they are entitled. In many class actions, whether ended by judgment after trial or by consent decree, the order of the court does not always secure the actual benefit and additional legal work may be required. To paraphrase the acute observation of baseball great Yogi Berra, a case ain't over till it's over. This means that class counsel are entitled to compensation until all benefits obtained by the litigation are in hand. Hence, hours reasonably expended on post-decree administration are compensable. The case is remanded for an award for this work.

The court's determination not to compensate for ninety-seven hours spent in settlement must also be reversed and remanded. Fee applicants provided the district court with very little detail as to how the hours claimed for this work were actually expended. The opposing counsel, however, indicated that he spent 100 hours on settlement and presumably billed the time and was paid. This is some evidence that the market place would not consider ninety-seven hours as excessive in this case.[3] Given this evidence and the failure of the district court to give a reason for its belief that ninety-seven hours was unreasonable and that twenty hours was, the decision on this point must be reversed and remanded. The

---

**3.** The court realizes that the time expended by opposing counsel is seldom relevant to a determination of hours reasonably expended on many tasks, but given the cooperative nature of the settlement process, time spent by one side might be mirrored in the time spent by the other.

court on reconsideration should bear in mind that the measure of reasonable hours is determined by the profession's judgment of the time that may be conscionably billed and not the least time in which it might theoretically have been done. If the court believes that prevailing counsel was merely inefficient, that fact should be reflected in the hourly rate awarded.

The law of this circuit requires reasoned explanation with reference to the court's finding that thirty of the hours expended were primarily for bookkeeping services. This court has examined the documents in the record and the fee application and can find neither evidence of thirty hours being expended on such work, nor evidence that the performance of such work inevitably occurred to any significant degree. Accordingly, this court can find no basis for the reduction. To be sure, the trial judge can judicially notice a rate for bookkeeping work or work customarily done by paralegals and it is equally true that a fee applicant is not entitled to compensation at an attorney's rate simply because an attorney undertook tasks which were mundane, clerical or which did not require the full exercise of an attorney's education and judgment. Where such an adjustment is made the district court must provide an identification of the hours falling within this category or at least point to circumstantial evidence from which it infers that substantial work of this nature was done. The district court's decision on this point is reversed and remanded for reconsideration in light of the principles announced here.

Appellants assign error for the refusal of the district court to enhance the lodestar figure. The district court found that substantial results were obtained while noting that the lawsuit may have been unnecessary in obtaining them. It declined to enhance its award because of the possibility of duplication of effort and the possibility of improperly charged hours. In this approach to the problem, the wrong standards were applied. Given the size of the class and the fact that the economic value of the case grew with the passage of time, it is inevitable that the recovery would sound significant in monetary terms. Sig-

nificance as that term is used in considering adjustments to the lodestar generally means legal significance, and that aspect of the outcome is not addressed by the court. Any enhancement begins with a finding that the results were exceptional; the district court has also failed to address this issue with reference to the extant substantive law. Accordingly, we remand for reconsideration. In adjusting the lodestar, as has been noted earlier, the court must take into account the significance of the results obtained in relation to those sought. It is at this point that the court may wish to make adjustments for unsuccessful theories and dismissal of the case as to some parties.

Even if the court found the results obtained to be exceptional, no enhancement for these results would be justified unless the court also finds that class counsel's representation was superior to that which would have been expected considering the rates requested. *Blum*, 465 U.S. at 899, 104 S.Ct. at 1549.

 The court was correct in denying enhancement for the contingency of the case. Even if this court were to assume that the results obtained were excellent, the record is absolutely devoid of any evidence that would suggest that enhancement over the rates requested is necessary to attract competent counsel into the field.

Finally, enhancement by way of awarding attorney's fees at current rates ought to be given every consideration by the district court upon remand because of the delay experienced by the attorneys in receiving payment.

## V.

## CONCLUSION

This court has jurisdiction to hear the appeal of the award of attorney's fees. The court has determined that some of the district court's findings are clearly erroneous and some of the conclusions of law are contrary to precedent, and accordingly, the award entered is REVERSED and the matter is REMANDED for a re-determination

of fees in light of the principles announced herein.