**Leonidas Ortega TRUJILLO, Jaime Ortega Trujillo, and Luis Alberto Ortega Trujillo, Plaintiffs,**

v.

**BANCO CENTRAL DEL ECUADOR, an agency of the Government of Ecuador, Augusto de la Torre, and Conover & Company Communications, Inc., Defendants.**

No. 98-0373-CIV-KING.

United States District Court,
S.D. Florida.
Miami Division.

Nov. 1, 2002.

**1370**

Steven E.M. Hartz, Esq., Akerman, Senterfitt & Eidson, P.A., Miami, Counsel for Banco Central del Ecuador.

Mark P. Schnapp, Esq., Greenberg Traurig et al., Miami, Counsel for the Ortegas.

Thomas R. Julin, Esq., Hunton & Williams, Miami, Counsel for Conover & Company.

Laura Besvinick, Esq., Davis Scott, Weber & Edwards, Miami, Counsel for Ansbacher Bahamas Ltd.

Peter J. Yanowitch, Esq., Miami, Counsel for Ansbacher Bahamas Ltd.

Thomas E. Scott, Esq., Cole, Scott & Kissane, Miami.

## ORDER GRANTING DEFENDANT'S MOTION FOR ATTORNEY'S FEES AND COSTS

KING, District Judge.

We have now arrived, after eighteen months of massive document filings, extensive evidentiary hearings and briefings to the last procedural step of Banco Central Del Ecuador's Motion for Attorneys Fees and Costs.

## I. FACTUAL BACKGROUND

On March 28, 2001, this Court granted the Plaintiffs Ortegas' motion for voluntary dismissal of their complaint and reserved jurisdiction to determine the fees, costs, and expenses sustained by the Defendants in defending this action.

The Court's last consideration of this issue resulted in this Court's order of March 1, 2002, directing the parties (more specifically their attorneys) to furnish such detailed information as would be needed to make an intelligent decision on the legal work necessarily performed in this case (as distinguished from legal work usable in pending litigation between the parties in foreign jurisdictions). That order reads in part:

> Defendant Banco Central del Ecuador's ("Central Bank") motion for approximately $2 million dollars in Attorney's Fees and Costs is the final issue in this case. This issue has literally "taken on a life of its own."

The Plaintiffs Ortega originally filed a suit for liable on February 20, 1998.[1]

---

1. The legal controversy between Plaintiffs and Defendants has been ongoing in three countries for over five years (four years in this Court, including a year and a half the case was stayed pending an appeal before the Eleventh Circuit Court of Appeals on two of six separate appeals). It involves fraud and defamation claims and counter-claims for over $150,000,000 and has spawned independent investigations for criminal misconduct.

Legal proceedings were initially begun by Central Bank in the Commonwealth of the Bahamas in 1997. Defendants accused the Plaintiffs of defrauding them of over $150,000,000. That civil action is still pending.

This Court became involved a year later, when the Plaintiffs filed a $10,000,000 defamation claim against Central Bank, a former employee of Central Bank, and Central

Now, four years later and eleven months after filing for attorneys' fees and costs, the only issue remaining in this case is for the Court to determine what part of these expenses are "wasted" effort defending this case in that the results of this effort cannot be used in the ongoing case between the same parties in the Bahamas; and the reasonableness of the expenses Defendant incurred.

Mindful of the teachings of the Eleventh Circuit opinion in *Yoffe v. Keller Indus.*, 580 F.2d 126, 129 (5th Cir.1978),[2] which affirmed a 1977 S.D. of Fla. (King, J.) decision, and now understanding the massive cost involved, the Court must give consideration to a fair method for applying Federal Rule of Civil Procedure 41(a)(2).

Plaintiffs moved for voluntary dismissal pursuant to Federal Rule of Civil Procedure 41(a)(2) on February 28, 2001. Pursuant to Federal Rule of Civil Procedure 41(a)(2), a federal court may dismiss an action at the request of a plaintiff "upon such terms and conditions as the court deems proper." (*Id.*) The Court granted Plaintiffs' Motion for Voluntary Dismissal and retained juris-

diction to determine the reasonableness of attorneys' fees, costs and expenses incurred by Defendants in defending this case. (*See* Court's Orders dated March 28 and July 11, 2001.)

Defendant Central Bank seeks more than $2 million[3] in attorneys' fees, costs and expenses paid its attorneys in this litigation. Defendant Central Bank has submitted voluminous, and substantially redacted, time and billing records.[4] In addition, Steven E.M. Hartz, Thomas E. Scott, George Volsky and John F. O'Sullivan filed declarations in support of Plaintiffs' motion.[5] Plaintiffs contest Defendant Central Bank's claim for attorneys' fees, costs and expenses submitting the declarations of Daniel S. Pearson and Samuel A. Terilli, Jr. in support of their opposition. Plaintiffs contend that Defendant has not met its burden of substantiating entitlement to a fee and cost award, and that the redacted submission effectively prevents Plaintiffs from asserting meaningful objections.

All of the witnesses who had filed written declarations, (named in the pre-

---

Bank's public relations firm. A $150,000,000 counter-claim based on the same allegations pending in the Bahamas case was filed against the Plaintiffs in this case. The counter-claim was dismissed by this Court, for the reason that it was duplicitous of the pending Bahamas case. The dismissal was without prejudice for Defendants to continue the fraud case where they had originally chosen the forum. Plaintiffs' liable case was stayed until resolution of the year old Bahamas case was resolved.

The dismissal and stay by this court (March 3, 1999) was reversed *Ortega Trujillo v. Conover & Co. Communications, Inc.*, 221 F.3d 1262 (11th Cir.2000). Upon remand, when the Southern District case was set by this court for pretrial conference and trial, Plaintiffs dismissed.

**2.** The Eleventh Circuit has adopted as binding precedent all Fifth Circuit decisions issued

prior to October 1, 1981. *See Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

**3.** Defendant's motion, filed April 27, 2001, seeks $1,673,576.30 attorneys' fees and $398,485.35 costs. After objections, responses, replies and supplemental memorandums were filed an evidentiary hearing for the purpose of taking substantial expert testimony, was held November 15 and November 26, 2001. Post-hearing memorandum were filed January 9, 2002.

**4.** See Defendant's Exhibits 4, 6, 8, 10, 11 (appx. 729 pages, Two Volumes) Evid. Hearing 11/15/01

**5.** See Defendant's Exhibits 1, 2, 3 (Volume I) Evid. Hearing 11/15/01

ceding paragraph) gave oral expert opinion testimony before the Court on November 15, 2001. Plaintiffs' experts opined that Defendant Central Bank's recovery should be no more than approximately $50,000 to prepare a motion to dismiss, or no more than $110,000 for costs incurred by Defendant Conover & Company Communications ("Conover"); and no cost recovery for the time, effort and expense incurred for work performed by Defendant's counsel that can be used in the still pending Bahamas litigation between Plaintiffs and Central Bank."[6]

Pursuant to that Order the Defendants filed a revised fee application on August 16, 2002, reducing its application fee from $2 million to less than $600,000. According to Defendants, this amount "only includes work that was incurred in defense of the defamation action and is not usable in other pending litigation." (Def.'s Mot. at 2.) Additionally, Defendant Banco Central seeks reimbursement of fees on behalf of fees it was legally obliged to pay for Defendant Conover & Company Communications' legal expenses ($133,267.48 ), and fees paid to its expert witness, Thomas E. Scott, Esq. ($37,800.00). Banco Central was obliged to indemnify Conover & Company Communications, Inc. ("Conover") in connection with this action. Banco Central in fact incurred expenses in the form of fees and costs paid to Hunton & Williams for the defense of Conover. Those amounts were specifically included within Banco Central's application for fees, costs, and expenses and the supporting documentation was provided to the Court, the Ortegas, and the expert witnesses for both sides.

The reasonableness of the amounts incurred by the Banco Central in connection with the defense of Conover in this action was attested to in the declaration of expert witness Thomas E. Scott. Counsel for the Ortegas had a full opportunity to examine Mr. Scott about his opinion on the reasonableness of those fees and costs. Indeed, the fees and costs incurred in connection with the defense of Conover were the subject of extensive discussion in connection with the hearings held by this Court on Banco Central's application.

Conover's fees and costs have been paid by the Banco Central and Banco Central is therefore the real party in interest on this motion. Banco Central's submission in response to this Court's March 28, 2001 Order, including its application for reimbursement of expenses paid to Hunton & Williams, complied in all respects with the provisions of Southern District of Florida Local Rule 7.3. The Ortegas point to no requirement of S.D. Fla. L.R. 7.3 that has not been met by the Banco Central and their objection on the basis of that Rule is rejected.

The Ortegas also object to the Banco Central's request for reimbursement of amounts paid to its expert witness Thomas E. Scott, Esq. The Ortegas do not argue that fees and expenses incurred in connection with litigating the issue of an award of fees and expenses are not a recoverable item. Instead they argue that reimbursement should be denied because the amount was not included in the materials filed by the Banco Central before Mr. Scott testified or rendered any bill for his services.

The Ortegas themselves retained two experts on this issue of a proper award of fees and costs. It was reasonable and necessary for the Banco Central to retain the services of an expert witness in this matter. The amounts paid to Mr. Scott relate solely to matters at issue in this

---

**6.** March 1, 2002, Order Determining Defendant's Two Million Dollar Request for Attorney's Fees and Costs Upon Plaintiffs' Dismissal of Complaint at 1–3.

action and will not result in work product that will be "useful elsewhere." Accordingly, under the terms of this Court's March 1, 2002 Order, the amounts paid to Mr. Scott are properly included in the award to the Banco Central.

The Plaintiffs object to virtually all of the entries in the revised fee application. (11/26/01 Hr'g Tr. at 29–30).

## II. LEGAL STANDARD

Once the initial determination to award fees and costs is made, the burden is upon the fee applicant, in this case Banco Central, to establish their fees and costs. *Norman v. Housing Auth. of the City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir.1988). On March 1, 2002, the Court ordered Defendant Banco Central to provide the Court with specific and detailed evidence from which the Court could determine the reasonableness and necessity of the hourly rates charged for the work performed.[7]

Plaintiffs do not contest the *hourly* rates charged by the law firm of Akerman Senterfitt & Eidson for work performed by the numerous lawyers (15), paralegals, secretaries and staff. (Ex. No. 11, Vol.II, p. 479.) The Court assumes no challenge was made because the hourly rates charged by Defendant's counsel are similar (or the same) as those charged by Plaintiff's counsel. But in any event, the Court finds the requested rates to be reasonable and consistent with hourly rates charged in this legal community.

In *Loranger v. Stierheim*, 10 F.3d 776 (11th Cir.1994), decided after the *Norman* case, the Eleventh Circuit concerned itself with the standard by which to determine the reasonableness of attorney's fees in massive litigation strikingly similar to this case. A motion for attorney's fees and costs pursuant to 42 U.S.C.A. § 1988, requesting $944,775 in fees and $9,671.23 in costs was filed. Plaintiff's counsel Ray "bombarded the district court with a vast array of documents in support of his motion for fees and costs." Ray filed time sheets totaling 199 pages and an 82 page summary of those sheets. The submitted motions, time sheets, and summaries exceeded 400 pages, and reflected work performed representing Loranger since 1979, in both state and federal court.

Presented with these voluminous documents, the district court awarded Ray fees of $50,400, finding 800 of the 2907 hours claimed to have been devoted to the federal part of the litigation. On appeal the court held: "Although a district court has wide discretion in performing these calculations, ... [t]he court's order on attorney's fees must allow meaningful review— the district court must articulate the decisions it made, give principled reasons for those decisions, and show its calculation." *Id.* at 781 (citing *Norman*, 836 F.2d at 1304). In making this determination, the *Loranger* court set forth the legal analysis required to ascertain (1) the reasonable hourly rate, (2) the reasonable number of compensable hours, (3) the enhancement of the fee award, and (4) the reasonable expenses.

Although elements (1) hourly rate and (3) enhancement are not at issue here; the question of what legal work performed can be used, (i.e. "not wasted") in ongoing cases in the Bahamas and Ecuador has emerged as the pivotal issue under (2) and (4) (reasonableness).

The facts before this Court are strikingly similar to those set forth in *Loranger*. Both cases concern themselves with massive and complex attorney's fees requests in multi-district (multi-nation) litigation that has taken years to process. In *Lor-*

7. March 1, 2002, Order at 4–5.

*anger,* Ray initially requested $944,775 in fees, whereas in this case, Banco Central originally sought over $2 million. Similarly, like Loranger's attorney Ray, both parties in this case have also "bombarded [this Court] . . . with a vast array of documents in support of [a] motion for fees and costs." Both Ray in *Loranger* and Banco Central in the instant case have also sought thousands of hours in compensable attorney's fees. While Ray filed a motion, time sheets, and time summaries exceeding 400 pages, the parties in this case have exceeded this number many times over. Here, Plaintiff's objections alone compose 145 legal-sized pages, often with as many as 10 objections per page, in small font. These objections, if they were typed out on standard-sized paper using twelve point font, would exceed a thousand pages. Further, as in *Loranger,* the Plaintiffs in this case also argue that the opposing attorneys grouped together their legal services fees, making it difficult for them to determine and separate the number of hours undertaken in the litigation before this Court, as opposed to litigation undertaken in other jurisdictions. Because of the nearly identical fact patterns of the two cases, this Court will apply *Loranger* in making a determination on Defendant Banco Central's attorney's fee motion.

## III. ANALYSIS

To ascertain the reasonable hourly rate, the Eleventh Circuit in *Loranger* stated that "[t]he party seeking attorney's fees bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates." *Loranger,* 10 F.3d at 781. "Satisfactory evidence" means "more than the affidavit of the attorney performing the work." *Id.* at 781. Additionally, the court "is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or with-

out the aid of witnesses as to value." *Id.* at 781. Here, because Plaintiffs, the Ortegas, do not object to the reasonable hourly rate, this Court finds, after careful consideration, that the hourly rate sought by Defendant Banco Central is reasonable for the work performed and services rendered by Akerman Senterfitt & Eidson, Hunton & Williams, and Thomas E. Scott, Esq.

Next, regarding the reasonable number of compensable hours, *Loranger* makes clear that only time "reasonably expended on the litigation" is compensable, and that it is the attorney's burden "to submit a request for fees that will enable the court to determine what time was reasonably expended on the federal litigation." *Loranger,* 10 F.3d at 782. However, where "a request for attorney's fees does not permit easy division between compensable and non-compensable hours, a district court should require the party seeking fees to refashion its request."

In its March 1, 2002, Order, this Court ordered Banco Central to do precisely this. Specifically, this Court stated that due to the pending litigation between the parties in the Bahamas, this Court would not award attorney's fees and costs incurred in "preparing and litigating, to date of dismissal, Defendant's Counterclaim." (March 1, 2002, Order at 11–14.) Further, the Court directed Defendant Banco Central to "furnish the redacted information . . . to enable the Court and counsel to determine whether or not the work performed was wasted, usable and necessary." (March 1, 2002, Order at 12.)

On August 16, 2002, Banco Central complied with the Court's Order and produced all of its billing entries to the Ortegas without redaction. (Def.'s Mot. at 4.) Additionally, Banco Central resubmitted their claim for attorney's fees, which reduced the original amount sought from $2 million to less than $600,000 for their services,

plus amounts dispersed for expert witness fees and the defense of Defendant Conover & Company Communications. This Court has carefully inspected Banco Central's submission, and finds that, pursuant to *Loranger*, they have submitted "a request for fees that will enable the court to determine what time was reasonably expended on the federal litigation."

■ *Loranger* next provides guidance on the method of determining the number of hours reasonably expended in the conduct of the *separate litigation* (i.e. usable elsewhere) to calculate an attorney's fee award. *Id.* at 782. Here, the rule in *Loranger*, which was designed to deal with massive, complex litigation involving voluminous documentation, differs from the rule articulated in *Norman*. The earlier decision in *Norman* requires a district court to specifically identify any disallowed, non-compensable hours, and to further explain why the hours are being disallowed. *Norman*, 836 F.2d at 1304. To perform this calculation, a judge must necessarily examine and consider each of the attorney's fee entries, each objection to those entries, the responses and replies thereto, and then make a determination regarding the legitimacy of each entry explaining the Court's modification, if any. However, in a complex, multi-million dollar litigation involving thousands of objections comprising hundreds of pages, undertaking such a task could only be described as a gargantuan waste of judicial resources.

"Implicit in the *Norman* hour-by-hour rule is the assumption that a district judge can feasibly and expeditiously engage in such a precise review. Where fee documentation is voluminous, such as in the instant case, an hour-by-hour review is totally impractical. Hence, the instant case falls outside the *Norman* hour-by-hour rule." *Loranger*, 10 F.3d at 783.

The *Loranger* court went on to state that, in voluminous, massive fee applica-

tions, "the district court need not engage in an hour-by-hour analysis.... Rather, once a district court determines how many hours were actually devoted to the conduct of the [litigation at bar], it may then reduce that figure in gross if a review of the resubmitted fee request warrants such a reduction." *Id. Loranger* concludes with the following instruction to district courts:

> [T]he district court should order [the attorney] to undertake to separate the time and expense related to the [litigation at bar] from that not so related. After that is done, the district court should be able to make findings as to the total time and expense reasonably expended on the federal litigation. However, the district court need only provide a concise explanation of its reduction, if any, as opposed to engaging in an hour-by-hour analysis. In a case like this one, no more should be required.

*Id.* at 784. Following *Loranger*, this Court finds that it would be impractical and a waste of judicial resources to engage in an hour-by-hour analysis of every objection posed by the Ortegas to Banco Central's submission of attorney's fees. Therefore, this Court will now address the issue of Banco Central's submission for attorney's fees.

Both parties agree that the usability analysis is the proper approach to determine the reasonableness of attorney's fees and costs in this case where lawsuits in the Bahamas and Ecuador between the parties on the same issues are still pending. (Trans. of Evidentiary Hr'g at 91.) Here, however, the Ortegas assert that the substantially redacted time and billing records provided by Defendant Banco Central do not provide detailed information on the specific tasks performed so as to permit this Court to determine if the work was "wasted," usable, or necessary in the federal litigation. According to Plaintiffs,

they are unable to challenge with particularity Defendant Banco Central's time and billing records; something they must do when challenging the reasonableness of attorney's fees and costs.

■ For example, a typical objection that is literally repeated hundreds of times is as follows: to Defendant Banco Central's entry "Draft Motion to Dismiss and to Strike," Plaintiff objects that "it is not clearly discernable what portion, if any, of this entry reflects wasted efforts of Central Bank in defending this action or work, effort and discovery that is or has been usable in the other pending litigation between the parties in the Bahamas and in Ecuador ." (Pl.'s Obj. at 3.) This objection, however, can (and has) been repeatedly used by Plaintiff to object not only to Defendant's Motion to Dismiss and Strike, but to numerous other entries as ostensibly innocuous as "Office Conference," "Research for Motion to Dismiss," "Review Motion for Reconsideration," and "Complete First Draft of Appeal." If, as a general rule, this Court were to sustain such objections, it is difficult to imagine under what circumstances an attorney could ever recover his or her fees. Adopting such a rule, therefore, would render judicial review of attorney's fees motions both futile and meaningless[8]. Consequently, this Court has instead reviewed Defendant's submissions under the dictates as set forth above in *Loranger.*

This Court has carefully reviewed Defendant's entries and finds that Banco Central has made a good-faith effort to properly separate the amounts incurred in defense of the defamation action from the amounts usable in other pending litigation pursuant to this Court's March 1, 2002, Order. "[O]nce a district court determines how many hours were actually devoted to the conduct of the [litigation at bar], it may then reduce that figure in gross if a review of the resubmitted fee request warrants such a reduction." *Loranger,* 10 F.3d at 783. In reducing their attorney's fees from more than $2 million to less than $600,000, this Court finds that Banco Central's attorney's fees submission "no longer contains *any* entries that relate exclusively to the counterclaim or any work that will be usable in the Bahamas litigation." (Def.'s Mot. at 2, 6.) Defendant's counsel have reasonably and fairly made those reductions in their fee request that would have been required by the Court, had they not done so voluntarily.

Accordingly, after a careful review of the record, the written and oral submission of counsel, and being otherwise fully advised, it is

ORDERED and ADJUDGED that Defendant's Motion for Attorney's Fees and Costs be, and the same is hereby, GRANTED. Defendants are awarded $720,566.33 in Attorney's Fees, reimbursement of fees and expenses paid to attorneys for defending Conover, and expenses paid to its expert witness, Thomas E. Scott, Esq.

---

8. A court may rely upon its own experience to make a determination of the reasonableness of attorney's fees and costs if the documentation provided is insufficient. *See Avirgan v. Hull,* 705 F.Supp. 1544, 1549 (S.D.Fla.1989) (King, J.) *aff'd,* 932 F.2d 1572 (11th Cir.1991).