Johnny REYNOLDS, et al., Plaintiffs,

v.

ALABAMA DEPARTMENT OF TRANSPORTATION, et al., Defendants.

Civil Action No. 85–T–665–N.

United States District Court, M.D. Alabama, Northern Division.

Nov. 21, 1995.

*Kukal,* 225 Kan. 478, 592 P.2d 860 (Kan.1979) (defendant threatened plaintiff's husband with pitchfork).

Laurie Edelstein, Rabinowitz, Boudin, Standard, Krinsky & Lieberman, P.C., New York City, pro se.

Winn S.L. Faulk, Mobile, AL, pro se.

Leonard Gilbert Kendrick, Montgomery, AL, Richard J. Ebbinghouse, Robert L. Wiggins, Jr., Jon C. Goldfarb, Gregory O. Wiggins, C. Paige Williams, Rebecca Anthony, Gordon, Silberman, Wiggins & Childs, Birmingham, AL, Julian L. McPhillips, Jr., McPhillips, Shinbaum, Gill & Stoner, Montgomery, AL, Rick Harris, Glassroth & Associates, Montgomery, AL, for Johnny Reynolds, Cecil Parker, Frank Reed, Ouida Maxwell, Martha Ann Boleware, Peggy Vonsherie Allen, Jeffery W. Brown.

Leonard Gilbert Kendrick, Montgomery, AL, Richard J. Ebbinghouse, Robert L. Wiggins, Jr., Jon C. Goldfarb, Gregory O. Wiggins, C. Paige Williams, Rebecca Anthony, Gordon, Silberman, Wiggins & Childs, Birmingham, AL, Claudia H. Pearson, Longshore, Nakamura & Quinn, Birmingham, AL, Julian L. McPhillips, Jr., McPhillips, Shinbaum, Gill & Stoner, Montgomery, AL, Rick Harris, Glassroth & Associates, Montgomery, AL, for Robert Johnson.

Florence Belser, Montgomery, AL, pro se.

Raymond P. Fitzpatrick, Jr., David P. Whiteside, Jr., Whiteside & Fitzpatrick, Birmingham, AL, for William Adams, Cheryl Caine, Tim Colquitt, William Flowers, Wilson Folmar, George Kyser, Becky Pollard, Ronnie Pouncey, Terry Robinson, Tim Williams.

William K. Thomas, R. Taylor Abbot, Jr., Cabaniss, Johnston, Gardner, Dumas & O'Neal, Birmingham, AL, Jeff Sessions, Attorney General, Office of the Attorney General, Montgomery, AL, Patrick H. Sims, Cabaniss, Johnston, Gardner, Dumas & O'Neal, Mobile, AL, for Gary Mack Roberts, James E. Folsom, Jr.

Bert S. Nettles, Lisa Wright Borden, London, Yancey, Elliott & Burgess, Birmingham, AL, William K. Thomas, R. Taylor Abbot, Jr., Cabaniss, Johnston, Gardner, Dumas & O'Neal, Birmingham, AL, Jeff Sessions, Attorney General, Office of the Attorney General, Montgomery, AL, Patrick H. Sims, Cabaniss, Johnston, Gardner, Dumas & O'Neal, Mobile, AL, for Halycon Vance Ballard, Dept. of Personnel, State of Ala.

Bert S. Nettles, Lisa Wright Borden, London, Yancey, Elliott & Burgess, Birmingham, AL, William K. Thomas, R. Taylor Abbot, Jr., Cabaniss, Johnston, Gardner, Dumas & O'Neal, Birmingham, AL, Jeff Sessions, Attorney General, Office of the Attorney General, Montgomery, AL, Jack Franklin Norton, Alabama Department of Transportation, Legal Division, Montgomery, AL, Patrick H. Sims, Cabaniss, Johnston, Gardner, Dumas & O'Neal, Mobile, AL, for Dept. of Transp., State of Ala.

## ORDER REGARDING ATTORNEY'S FEES AND EXPENSES FOR PLAINTIFFS FOR WORK THROUGH MAY 2, 1994

MYRON H. THOMPSON, Chief Judge.

In this longstanding lawsuit, the plaintiffs charged that the defendants discriminated against them in employment because they are African–Americans. The plaintiffs represent a class of African–American merit and non-merit system employees and unsuccessful applicants. The defendants include the Alabama Department of Transportation, the Alabama State Personnel Department, and several state officials. The plaintiffs based this lawsuit on the following: Title VII of the Civil Rights Act of 1964, as amended, codified at 42 U.S.C.A. §§ 1981a, 2000e through 2000e–17; the fourteenth amendment to the United States Constitution, as enforced by 42 U.S.C.A. § 1983; and 42 U.S.C.A. § 1981. The jurisdiction of the court has been invoked pursuant to 28 U.S.C.A. § 1343 and 42 U.S.C.A. § 2000e–5(f)(3).

This lawsuit is currently before the court on the plaintiffs' request for attorney's fees and expenses from one of the defendants, the Department of Transportation, in the amount of $3,665,249.67. This request is for work done through May 2, 1994. For the reasons that follow, the court will order the following: first, the parties will be required to brief further the issue of whether the plaintiffs are entitled to recover $90,208.56 in interest on

**1452**

expenses; and, second, of the remainder of the amount requested, the plaintiffs will receive $2,316,909.10 from the Department of Transportation.

## I. BACKGROUND

This lawsuit was initiated in May 1985. In 1988, the parties reached a full settlement of this case but the court refused to approve the proposed consent decree in the face of numerous objections from the members of the plaintiff class. *Reynolds v. King*, 790 F.Supp. 1101 (M.D.Ala.1990). In 1993, after a trial which spanned over a six-month period and ended with the presentation of only part of the plaintiffs' case, the parties reached a second, albeit only partial, settlement, subsequently embodied in three consent decrees. In the wake of this new settlement, the court allowed a group of non-class members—consisting predominantly of white employees of the department and now commonly referred to as the "Adams intervenors"—to intervene and challenge any race-conscious provisions in the settlement. *Reynolds v. Roberts*, 846 F.Supp. 948 (M.D.Ala.1994). One of the consent decrees was approved by the court on March 16, 1994.[1] The two others are currently under the court's consideration.

On June 9, 1994, the plaintiffs filed a motion for scheduling proceedings to determine the contested portion of their request for attorney's fees and expenses, pursuant to article XXI of the approved consent decree.[2] The plaintiffs had submitted a fee and expense request which the Department of Transportation paid in part and contested in part.[3] In an order entered on September 27, 1995, the court divided the contested part of the fee request into two time periods, and considered each time period separately.[4] The first is a request for fees and expenses in the amount of $3,665,249.67 for work done through May 2, 1994.[5] This order addresses only this first request. The second is a request for fees and expenses for the period from May 3, 1994, through August 4, 1995, which will be addressed in a later, separate order.

The plaintiffs' request for $3,665,249.67, which is based on their second revised summary of hours and hourly rates,[6] may be broken down as follows:

| | |
|---|---|
| Attorney's fees and paralegal fees for requested period | $4,660,282.65 |
| Less amount already paid | 1,334,492.01 |
| Subtotal | $3,325,790.64 |
| | |
| Expenses for requested period | $ 464,574.88 |
| Less amount already paid | 125,115.85 |
| Subtotal | $ 339,459.03 |
| | |
| TOTAL | $3,665,249.67 [7] |

The $4,660,282.65 figure includes a requested enhancement for extraordinary results.[8] The plaintiffs' expense request for $464,574.88 includes $90,208.56 in interest on expenses, which they contend is due because of a delay in payment.[9]

As explained below, the court reserves ruling on the $90,208.56 request because it has

---

1. Doc. no. 553. *Reynolds v. Alabama Dept. of Trans.*, 1994 WL 899259 (M.D.Ala.1994).

2. Doc. no. 577.

3. In an order entered June 19, 1995 (Doc. no. 621), the court denied as moot the plaintiffs' motion for an extension of time regarding the *uncontested* fees, filed June 9, 1994 (Doc. no. 577). In another order entered June 19, 1995 (Doc. no. 620), the court set for submission the *contested* portion of the plaintiffs' request for attorney's fees.

4. Doc. no. 774.

5. Plaintiffs' second revised summary of hours and hourly rates, filed September 28, 1995 (Doc.

no. 775); Plaintiffs' itemization of time and expenses, filed August 4, 1995 (Doc. no. 697).

6. Filed September 28, 1995 (Doc. no. 775).

7. Plaintiffs' second revised summary of hours and hourly rates, filed September 28, 1995 (Doc. no. 775).

8. Plaintiffs' revised summary of hourly rates to reflect enhancement sought, filed September 13, 1995 (Doc. no. 746); plaintiffs' reply to defendants' response to attorneys' fee submission, filed September 13, 1995 (Doc. no. 747).

9. Plaintiffs' second revised summary of hours and hourly rates, filed September 28, 1995 (Doc. no. 775).

not been briefed by the parties. Of the requested remainder of $3,575,041.11 ($3,665,249.67 less $90,208.56), the court concludes that the plaintiffs should recover only $2,316,909.10. This figure includes $2,068,279.39 for attorney's fees and paralegal fees and $248,629.71 for expenses.

## II. ATTORNEY'S FEES AND PARALEGAL FEES

The attorney's fee provisions of 42 U.S.C.A. § 1988(b) and 42 U.S.C.A. § 2000e–5(k) authorize courts to award reasonable attorney's fees to prevailing civil rights litigants. The plaintiffs and the Department of Transportation have agreed that the plaintiffs are the prevailing litigants and are thus entitled to reasonable attorney's fees and expenses. The 1994 approved consent decree provides in part that, "In the event that the fees and expenses must be determined by the Court, the parties stipulate that the proposed Consent Decree, if adopted by the Court, constitutes full relief on all claims asserted in this action and that the plaintiffs are the prevailing party as to all issues and claims in this lawsuit." [10]

▮ The "starting point" in setting an attorney's fee under §§ 1988(b) and 2000e–5(k) is to determine the "lodestar" figure—that is, the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983); *accord Norman v. Housing Authority of City of Montgomery,* 836 F.2d 1292, 1299 (11th Cir.1988). The fee applicant bears the burden of "establishing entitlement and documenting the appropriate hours and hourly rates." *Id.* at 1303. After calculating the lodestar fee, the court should then proceed with an analysis of whether any portion of this fee should be adjusted upward or downward. *Pennsylvania v. Delaware*

*Valley Citizens' Council for Clean Air ("Delaware Valley I"),* 478 U.S. 546, 565–66, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986); *see also Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987); *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1940.

▮ In making the above determinations, the court is guided by the twelve factors set out in *Johnson v. Georgia Highway Express,* 488 F.2d 714, 717–19 (5th Cir. 1974).[11] *See Delaware Valley I,* 478 U.S. at 564, 106 S.Ct. at 3097–98; *Norman,* 836 F.2d at 1299.[12] These factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the clients; and (12) awards in similar cases.

### A. Reasonable Hours

The plaintiffs have requested compensation for a total of 23,311.23 hours: 14,806.89 hours for attorneys and 8,504.34 hours for paralegals. They have submitted itemizations as follows:

| | |
|---|---|
| Robert L. Wiggins, Jr. | 6,579.80 |
| Ann K. Norton/Wiggins | 2,107.72 |
| Robert F. Childs, Jr. | 194.75 |
| Richard J. Ebbinghouse | 1,386.78 |
| Jim Mendelsohn | 638.50 |
| Lee D. Winston | 1,234.99 |
| Greg O. Wiggins | 610.90 |
| Jon C. Goldfarb | 769.25 |
| Elizabeth Courtney | 394.70 |

**10.** Consent decree I, Art. 21, ¶ 2, filed March 16, 1994 (Doc. no. 553).

**11.** In *Bonner v. Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit

handed down prior to the close of business on September 30, 1981.

**12.** It is presumed that most or all of the *Johnson* factors will be subsumed in the calculation of the lodestar. *Norman,* 836 F.2d at 1299; *see also Hensley,* 461 U.S. at 439 n. 9, 103 S.Ct. at 1940 n. 9.

| | |
|---|---|
| Byron R. Perkins | 259.40 |
| Timothy D. Davis | 4.50 |
| Naomi H. Archer | 592.35 |
| Amelia Griffith | 25.75 |
| Rocco Calamusa | 7.50 |
| | |
| TOTAL ATTORNEYS | 14,806.89 |
| | |
| Lee Winston | 577.32 |
| Greg O. Wiggins | 1,146.70 |
| Amelia Griffith | 162.25 |
| Rocco Calamusa | 303.25 |
| Bea Harrison | 2,381.12 |
| Angela Brake | 471.20 |
| Debra Whit | 474.20 |
| Grady Barber | 1,096.61 |
| Bernard Chatters | 442.57 |
| Portia Carter | 7.80 |
| Natalie Remmert | 1,019.84 |
| Liz Carlee | 13.50 |
| Traci Arnold | 18.19 |
| Karli Larussa | 21.09 |
| Ashley Collins | 10.30 |
| Michael Weimorts | 87.90 |
| Evelyn Maiber | 9.50 |
| Joel Isenberg | 83.00 |
| Kenneth Hairston | 28.00 |
| Joe Beach | 8.25 |
| Rebecca Brown | 3.50 |
| Ward Wilson | 17.25 |
| Leslie Hodge | 121.00 |
| | |
| TOTAL PARALEGAL | 8,504.34 [13] |

The Department of Transportation has raised several objections to the number of hours listed by the plaintiffs. In considering each objection and the overall reasonableness of number of hours listed, the court considers two *Johnson* factors—the time and labor required, and the novelty and difficulty of the case.

■ *Excessive number of hours* : The Department of Transportation contends that the number of hours claimed is excessive because more attorneys and paralegals than were necessary worked on the case, especially at trial, and because there was a duplication of some work.[14] The plaintiffs respond that the trial was unusually complex and lengthy, and required many more attorneys than would be typically required in a case.[15] They seek fees for a total of 14 attorneys,[16] and, of these, ten attended at least some of the trial.[17]

The court agrees with the plaintiffs that the trial of this case was quite exceptional. It spanned six months of the year 1992 and lasted 43 days, and yet the plaintiffs still did not finish putting on their case. Thus, the plaintiffs faced and had to be prepared for an even much longer trial, spanning possibly up to a year and including, of course, preparing not only their own case but a rebuttal of the defendants' case. In addition, the schedule established by the court required that the plaintiffs present the claims of 80 individual claimants, one after the other. Thus, the trial was actually analogous to 80 trials, which, although overlapping in substantial degree, were each of substantial complexity both factually and legally. Because the plaintiffs' attorneys divided responsibility for the individual claimants, the trial went smoothly and without undue interruption. The trial of this case demanded a large legal force. The court finds that the plaintiffs' attorneys seek only to be "compensated for the distinct contribution of each lawyer," *Norman*, 836 F.2d at 1302 (citing *Johnson v. University College of University of Alabama in Birmingham*, 706 F.2d 1205, 1208 (11th Cir.1983), *cert. denied*, 464 U.S. 994, 104 S.Ct. 489, 78 L.Ed.2d 684 (1983)), and that none of the attorneys was "unreasonably doing the same work" as another attorney. *Id.* Indeed, plaintiffs' counsel are to be commended for the efficient, and thus ultimately

13. Doc. no. 553.

14. Defendant's response to plaintiffs' fee submission, filed September 1, 1995 (Doc. no. 730).

15. Plaintiffs' reply to defendants' response to attorney's fee submission at 3–11, filed September 13, 1995 (Doc. no. 747).

16. Plaintiffs' itemization of time and expenses, filed August 4, 1995 (Doc. no. 697); Plaintiffs' second revised summary of hours and hourly rates, filed September 28, 1995 (Doc. no. 775).

17. Based on the court's review of the itemization of time, it appears that the following attorneys attended at least some of the trial: Robert L. Wiggins, Ann K. Norton/Wiggins, Richard J. Ebbinghouse, James Mendelsohn, Lee Winston, Gregory O. Wiggins, Jon C. Goldfarb, Elizabeth E. Courtney, Byron R. Perkins, and Naomi Hilton Archer.

cost-saving, manner in which they prepared, managed, and presented the plaintiffs' case.

■ *Unreliable time records*: The Department of Transportation contends that the time records submitted in support of the attorney's fee claim are unreliable, and it points to several specific time entries which it contends support this contention.[18] The plaintiffs respond that they have either adequately explained or already withdrawn each allegedly unreliable entry.

The department points to several days on which some of the plaintiffs' attorneys billed more than 15 hours as evidence that the plaintiffs' attorneys are poor record keepers.[19] The plaintiffs respond that, with one exception, the days on which attorneys billed more than 15 hours were simply extremely busy days on which they worked on *Reynolds*, and that their time records are accurate.[20] The one exception is the October 2, 1991, entry for Ann K. Norton/Wiggins, which shows that Ms. Wiggins worked 18.25 hours. According to the plaintiffs, the record should show that she actually worked 13.25 hours, and they have withdrawn their request for the five additional hours.[21] These five hours are not included the listed 2,107.72 hours shown for Ms. Wiggins. The court finds that the plaintiffs' explanation for the days on which attorneys billed more than 15 hours is credible and reasonable.

The department contends that the time records are unreliable because the April 28, 1992, entry for Greg O. Wiggins indicates that he worked nine hours for "Structural Steel".[22] At a hearing on September 15, 1995, the plaintiffs explained that "Structural Steel" referred to a job category at the Department of Transportation, and not to a separate case as the department alleged. The court credits the plaintiffs' explanation.

The department contends that the time records are unreliable because paralegal Debra Whit billed two hours for her drive from Birmingham to Montgomery, which the department contends is excessive. At the September 15 hearing, the plaintiffs withdrew one-half hour of this request, leaving the time billed for the 90–mile trip at 90 minutes. The listed 474.20 hours for Ms. Whit includes this half hour. With the reduction of this half hour, the total hours for Ms. Whit is 473.70. The court finds that this reduced time to be reasonable.

■ The department contends that the itemizations filed for several attorneys and paralegals show that the plaintiffs reconstructed their time records. The department further contends that it is improper to reconstruct time records, and that any itemizations prepared long after the date the work actually took place are unreliable.[23] At the September 15 hearing, the plaintiffs explained that the itemizations do not indicate reconstruction of time, but rather are for time spent eliminating ambiguous or confusing explanations in the itemization, exercising billing judgment by eliminating hours which are not properly part of the fee request, and otherwise preparing the fee request for submission to the court. The court finds this explanation credible.

■ *Improper hours*: The department contends that many of the tasks for which plaintiffs seek fees are not properly part of a fee request, and gives several specific examples of what it contends are improper tasks.[24] The plaintiffs respond that all of the work for which they seek fees was necessary to the litigation. First, the department contends that the plaintiffs seek to be reimbursed for several tasks which should be treated as overhead and absorbed by the plaintiffs. It contends that plaintiffs may not seek fees for

18. Defendant's response to plaintiffs' fee submission, filed September 1, 1995 (Doc. no. 730).

19. *Id.*

20. Plaintiffs' letter response to the court, filed September 19, 1995 (Doc. no. 758) at 3–7.

21. *Id.* The lodestar reflects this reduction of five hours from Ms. Wiggins's time.

22. Defendant's response to plaintiffs' fee submission at 9, filed September 1, 1995 (Doc. no. 730).

23. *Id.*

24. Defendant's response to plaintiffs' fee submission at 10–13, filed September 1, 1995 (Doc. no. 730).

time expended arranging for office space in Montgomery. At the September 15 hearing, the plaintiffs explained that because of the size of the plaintiff class, the length and demanding schedule of the trial, and the number of documents related to the case, it was necessary that they contract for office space in Montgomery. They contend that the time spent arranging for office space was necessary to the litigation.[25] The court agrees that the extraordinary circumstances of this case justify the payment of fees associated with setting up the office in Montgomery. First, the plaintiffs' attorneys had to sort through a number of claims and potential claims to determine which were valid. This required that they be available in Montgomery for interviews, and further that they have substantial office space for the interviews and to store the many documents related to the claims. Second, because the court set a demanding trial schedule, the plaintiffs had to be better organized and prepared than would have been required in a more typical case.

 The department contends that there was an unnecessary duplication of work because two or more attorneys or paralegals did work which could have been done by one person. The plaintiffs respond that the complexity of the case required the efforts of a large number of lawyers, in particular during the trial. Because this was an unusual case, as described more fully above, the court accepts this explanation.

*Paralegal time*: The plaintiffs seek compensation for two types of work done by paralegals: first, for work traditionally done by an attorney, and, second, for work which although clerical is still compensable because it was "excessive clerical work."

 The plaintiffs may be compensated for work done by paralegals only to the extent that it is "traditionally done by an attorney," *Allen v. United States Steel Corp.*, 665 F.2d 689, 697 (5th Cir. Unit B 1982).[26] The department first contends, essentially for the reasons discussed above concerning attorney hours, that the number of paralegal hours is excessive. As discussed above, the court finds the department's contention meritless.

The department raised objections to many specific expenses as well. It contends that because "typing" is not a task ordinarily done by an attorney, the plaintiffs may not be compensated for that work. At the September 15 hearing, the plaintiffs explained that entries for "typing" were actually instances in which paralegals were drafting pleadings or memoranda. Thus the entries for "typing" are for work traditionally done by an attorney. The court credits this explanation.

 As to the department's other specific objections for such things as labeling and sorting, the plaintiffs have recharacterized this work as "excessive clerical work" and reduced the requested hourly rate from the paralegal rate of $65 an hour to the clerical rate of $25 an hour. Based upon the court's review of these hours, it appears that the tasks billed as clerical work are tasks which should be included in the "routine office overhead normally absorbed by the practicing attorney." *Dowdell v. City of Apopka, Florida*, 698 F.2d 1181, 1192 (11th Cir.1983). Therefore, the department's objection to the excess clerical work is sustained, and the plaintiffs may not be compensated for the 403.35 hours claimed as excess clerical time. The 8,504.34 hours listed for paralegal work will be reduced by 403.35, to 8,100.99 hours, and the one half hour withdrawn from the request for paralegal Whit further reduces the total compensable paralegal hours to 8,100.49.[27]

---

**25.** *See also* Response to Transportation Department's objections to itemized expenses, filed November 11, 1995 (Doc. no. 820).

**26.** In *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir.1982), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the post-September 30, 1981, decisions of Unit B of the former Fifth Circuit.

**27.** Plaintiffs' second revised summary of hours and hourly rates, filed September 28, 1995 (Doc. no. 775). The summary contains an error in the breakdown of paralegal and excess clerical hours. Pursuant to a letter to the court filed October 31, 1995 (Doc. no. 802), and the stipulation of the parties of November 15, 1995 (Doc. no. 827), the number of paralegal hours is 8,100.99, and the number of excess clerical

In conclusion, the court has conducted a detailed and independent review of the hours claimed and is satisfied that all of the *attorney* hours were necessary and directly related to the successful pursuit of the plaintiffs' claims, and that none of the attorney hours is "excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart,* 461 U.S. at 434, 103 S.Ct. at 1939–1940. However, as to the *paralegal* hours, the plaintiffs may recover for only the 8,100.49 hours of non-clerical work.

### B. Prevailing Market Rate

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman,* 836 F.2d at 1299. To determine the prevailing market rate, the court will consider the following *Johnson* factors: the customary fee in the community; skills required to perform the legal services properly; the experience, reputation, and ability of the attorneys; time limitations; preclusion of other employment; undesirability of the case; nature and length of the professional relationship with the clients; and awards in similar cases. The plaintiffs' attorneys and paralegals seek the following hourly rates for themselves:

| | |
|---|---|
| Robert L. Wiggins, Jr. | $300 |
| Ann K. Norton/Wiggins | $190 |
| Robert F. Childs, Jr. | $300 |
| Richard J. Ebbinghouse | $225 |
| Jim Mendelsohn | $225 |

| | |
|---|---|
| Lee D. Winston | $135 |
| Greg O. Wiggins | $135 |
| Jon C. Goldfarb | $160 |
| Elizabeth Courtney | $160 |
| Byron R. Perkins | $160 |
| Timothy D. Davis | $160 |
| Naomi H. Archer | $160 |
| Amelia Griffith | $135 |
| Rocco Calamusa | $135 |
| Paralegals | $ 65 [28] |

*Customary Fee in the Community* : The Department of Transportation contends that the hourly rates claimed by plaintiffs are excessive and it suggests that reasonable hourly rates would range from $200 for Robert Wiggins and Robert Childs to $115 for new associates.[29] Plaintiffs' affidavits show that Alabama attorneys practicing in the same and similar areas of law with approximately the same experience and skill as plaintiffs' attorneys charge non-contingent fees ranging from $135 per hour to $300 per hour.[30] Law from cases, which are listed below, supports the plaintiffs' evidence, and reflects that the customary fee range for attorneys in civil rights cases in Alabama, depending on each attorney's experience, reputation, and ability, is $130 to $290 an hour.[31] The evidence also indicates that $65 per hour is reasonable for a qualified paralegal.[32]

*Skill Required to Perform the Services Properly* : This litigation has from beginning to end posed a difficult and demanding task. It required lawyers skilled in employment

---

hours is 403.35. The court has used these figures.

**28.** Plaintiffs' revised summary of hourly rates to reflect enhancement sought, filed September 13, 1995 (Doc. no. 746).

**29.** Defendants' response to plaintiffs' fee submission, filed September 1, 1995, at 6, filed September 1, 1995 (Doc. no. 730). Fred Ingram, the department's expert, suggests that reasonable hourly rates would range from $215–225 for Robert Wiggins and Childs to $105–130 for new associates. Ingram also indicates that $65 per hour is reasonable for a qualified paralegal. *Id.,* appendix A.

**30.** Plaintiffs' itemization of time and expenses, at vol. III, appendices 2–7, filed August 4, 1995 (Doc. no. 697).

**31.** As originally envisioned by Congress, civil rights attorneys were to be paid on a par with

commercial lawyers. *See* S.Rep. No. 1011, 94th Cong., 2d Sess. 6 (1976), 1976 U.S.Code Cong. & Admin.News 5913 ("It is intended that the amount of fees awarded under [§ 1988] be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases[,] and not be reduced because the rights involved may be nonpecuniary in nature.") Regrettably, this has not proved to be true. Indeed, if plaintiffs' attorneys when they completed law school had chosen to devote themselves to commercial rather than public interest law, they would today, in light of their abilities, be able to command a substantially higher hourly rate.

**32.** Defendants' response to plaintiffs' fee submission at appendix A, affidavit of Fred Ingram, filed September 1, 1995 (Doc. no. 730).

law and in handling large class actions. All of the plaintiffs' attorneys met this standard.

*Experience, Reputation, and Ability of the Attorney*: Although the plaintiffs' attorneys vary in experience, all are competent attorneys. The more experienced attorneys—Robert Wiggins, Childs, Ebbinghouse, Mendelsohn and Ann Norton/Wiggins—also enjoy excellent reputations. Robert Wiggins, however, has national prominence and possesses greater experience and ability.

■ *Time Limitations*: Where there has been "[p]riority work that delays the lawyer's other work," this factor requires "some premium." *Johnson*, 488 F.2d at 718. There is some evidence of this factor because of the demanding trial schedule and the large number of claims that had to be evaluated and presented in a short time.

■ *Preclusion of Other Employment*: This factor "involves the dual consideration of otherwise available business which is foreclosed because of conflicts of interest which occur from the representation, and the fact that once the employment is undertaken the attorney is not free to use the time spent on the client's behalf for other purposes." *Johnson*, 488 F.2d at 718. The court finds that for Robert Wiggins and Ann Norton/Wiggins, there was some preclusion of other employment. However, because the firm as a whole was not unduly affected, the court is not convinced that this factor has played a significant role in this litigation.

■ *Undesirability of the Case*: In general, civil rights litigation is seen "as very undesirable because it stigmatizes an attorney as a 'civil rights lawyer' and thus tends to deter fee-paying clients, particularly high-paying commercial clients, from seeking assistance from that lawyer." *Stokes v. City of Montgomery*, 706 F.Supp. 811, 815 (M.D.Ala. 1988), *aff'd*, 891 F.2d 905 (11th Cir.1989) (table). The results of such litigation tend to arouse the emotions of all concerned, and

frequently the attorneys who bring these cases are the subjects of prolonged and vitriolic hostility. This case certainly involves such hostility.

*Nature and Length of Relationship with Client*: The plaintiffs' attorneys have represented the class since 1991.

*Awards in Similar Cases*: The court has awarded non-contingent fees in the range of $125 to $290 an hour in other civil rights cases. *See, e.g., James v. City of Montgomery*, No. 94–T–264–N, 1995 WL 271138 at *4 (M.D.Ala. Apr. 19, 1995); *Lee v. Randolph County Bd. of Educ.*, 885 F.Supp. 1526, 1532 (M.D.Ala.1995); *Medders v. Autauga County Bd. of Educ.*, 858 F.Supp. 1118, 1129 (M.D.Ala.1994); *Wyatt v. King*, No. 3195–N, 1991 WL 640065, at *3 (M.D.Ala. Dec. 17, 1991); *Hidle v. Geneva County Bd. of Educ.*, 681 F.Supp. 752, 756–758 (M.D.Ala.1988).

The court is of the opinion, based on these criteria, that the prevailing rates for non-contingent work performed by attorneys of similar experience in similar cases are as follows for the plaintiffs' attorneys and paralegals: [33]

| | |
|---|---|
| Robert L. Wiggins, Jr. | $225 |
| Ann K. Norton/Wiggins | $180 |
| Robert F. Childs, Jr. | $225 |
| Richard J. Ebbinghouse | $200 |
| Jim Mendelsohn | $200 |
| Lee D. Winston | $130 |
| Greg O. Wiggins | $130 |
| Jon C. Goldfarb | $160 |
| Elizabeth Courtney | $160 |
| Byron R. Perkins | $160 |
| Timothy D. Davis | $160 |
| Naomi H. Archer | $160 |
| Amelia Griffith | $130 |
| Rocco Calamusa | $130 |
| Paralegals | $ 65 |

### C. Lodestar Calculation

The unadjusted lodestar consists, as stated, of the product of compensable hours multiplied by the prevailing market rate. The lodestar fees for those who worked on behalf of the plaintiffs are as follows:

---

**33.** By establishing the appropriate market rate on the basis of current rates, the court is also compensating the plaintiffs for the delay in payment. *See Missouri v. Jenkins*, 491 U.S. 274, 283–84, 109 S.Ct. 2463, 2469, 105 L.Ed.2d 229 (1989); *Norman*, 836 F.2d at 1302.

| ATTORNEYS | RATE | HOURS | AMOUNT |
|---|---|---|---|
| Robert L. Wiggins, Jr. | $225 | 6,579.80 | $1,480,455.00 |
| Ann K. Norton/Wiggins | $180 | 2107.72 | $ 379,389.60 |
| Robert F. Childs, Jr. | $225 | 194.75 | $ 43,818.75 |
| Richard J. Ebbinghouse | $200 | 1,386.78 | $ 277,356.00 |
| Jim Mendelsohn | $200 | 638.50 | $ 127,700.00 |
| Lee D. Winston | $130 | 1,234.99 | $ 160,548.70 |
| Greg O. Wiggins | $130 | 610.90 | $ 79,417.00 |
| Jon C. Goldfarb | $160 | 769.25 | $ 123,080.00 |
| Elizabeth Courtney | $160 | 394.70 | $ 63,152.00 |
| Byron R. Perkins | $160 | 259.40 | $ 41,504.00 |
| Timothy D. Davis | $160 | 4.50 | $ 720.00 |
| Naomi H. Archer | $160 | 592.35 | $ 94,776.00 |
| Amelia Griffith | $130 | 25.75 | $ 3,347.50 |
| Rocco Calamusa | $130 | 7.50 | $ 975.00 |
| Subtotal—Attorneys | | 14,806.89 | $2,876,239.55 |
| Subtotal—Paralegals | $ 65 | 8,100.49 | 526,531.85 |
| Lodestar | | | $3,402,771.40 |

---

### D. Adjustment

The plaintiffs seek an enhancement for extraordinary results. The department contends that the lodestar figure is adequate and an enhancement is not proper. The court finds that because the lodestar fee adequately reflects the skill and experience of the attorneys, and the complexity and difficulty of the litigation, an enhancement is not appropriate. The plaintiffs should therefore recover the following for attorney fees and paralegal fees:

Lodestar $3,402,771.40
Less amount already paid 1,334,492.01

Total $2,068,279.39

### III. EXPENSES

The plaintiffs also request an award of $339,459.03 for costs and expenses. This amount includes $90,208.56 in interest on expenses. Because the parties have not briefed the issue of interest on expense, the court will require that they do so.

The remaining claimed expenses of $248,785.09 include costs for transcripts, copying, long distance telephone calls, postage, facsimile transmissions, travel, meals, expert witnesses, and quantitative research.

The department has lodged objections to many of the expenses, alleging that they should be borne by the plaintiffs as overhead or clerical expenses, that the expenses are duplicative or excessive, that some are insufficiently described, and that some are not reimbursable.[34] A prevailing plaintiff may recover "all reasonable expenses incurred in care preparation, during the course of litigation, or as an aspect of settlement of the case." *Dowdell*, 698 F.2d at 1192. To determine which expenses may properly be included, the court must look to "the attorney-client relationship, the substantive and procedural nature of the case, and the climate in which the litigation is conducted." *Id.* The department has objected to expenses related to the office in Montgomery, and to other specific expenses described merely as "advanced costs" or "miscellaneous." The plaintiffs have withdrawn a total of $465.38 from their request. Of this amount, $310.00 was withdrawn prior to the filing of the second revised summary of hours and hourly rates,[35] and it is not included in the total request considered by the court. An additional $155.38 has been withdrawn since the second revised summary was filed,[36] and this amount

---

**34.** Defendant's response to plaintiffs' fee submission, at attachment L, filed September 1, 1995 (Doc. no. 730).

**35.** Filed September 28, 1995 (Doc. no. 775). The plaintiffs withdrew the following expenses: $10.00, paid to the traffic citation division on July 14, 1992; $300.00 for child care costs paid on October 26, 1992.

**36.** Plaintiffs' response to Transportation Department's objections to itemized expenses, filed November 9, 1995 (Doc. no. 820), appendix A. In addition to $310.00 previously withdrawn, the

must be subtracted by the court. Thus the $248,785.09 in claimed expenses is reduced by $155.38, resulting in a total of $248,629.71 in claimed expenses. The plaintiffs have also supplied more detailed explanations for many of the claimed expenses.[37] The court has closely examined all of the expenditures, the department's objections, and the plaintiffs' new, more complete explanations. Based on this review, the court concludes that all of the expenses were reasonable, necessary to the litigation, and are adequately described. *See NAACP v. City of Evergreen,* 812 F.2d 1332, 1337 (11th Cir.1987); *Dowdell,* 698 F.2d at 1191–92. Therefore, the court concludes that the plaintiffs' attorneys are entitled to recover a total of $248,629.71 in expenses.

## IV. CONCLUSION

 Because of the errors uncovered in the plaintiffs' submissions regarding their attorney and paralegal fees and expenses, the Department of Transportation has requested that the court name a special hearing officer or magistrate judge to investigate independently the billing practices of the law firm of Gordon, Silberman, Wiggins & Childs (of which plaintiffs' counsel are members), including a review of not only all records and practices connected with this litigation but those of other contemporaneous litigation handled by the law firm over the last few years. This litigation has been long, difficult, and expensive, and has required a large legal force to pursue the complicated factual and legal issues involved. It would therefore be expected that the plaintiffs' fee and expense request would be complicated, and that, under close scrutiny, some errors would surface. The court is convinced that, against this background, the plaintiffs' fee and expense submissions have been sufficiently ac-

curate and reliable to allow for the determination the court has made today.[38]

Accordingly, it is ORDERED as follows:

(1) The plaintiffs' motion for attorney's fees and expenses, filed on June 9, 1994 (Doc. no. 577), is granted for work through May 2, 1994;

(2) The plaintiffs have and recover from the defendant Department of Transportation the sum of $2,068,279.39 in attorney's fees, and the sum of $248,629.71 in expenses, for a total of $2,316,909.10; and

(3) The issue of whether the plaintiffs may recover interest on expenses in the amount of $90,208.56 is set for submission, without oral argument, on December 18, 1995, with the plaintiffs to file their brief by December 4, 1995, and defendant Department of Transportation to do the same by December 18, 1995.

plaintiffs have also withdrawn the following expenses: $4.00 paid to the Montgomery Municipal Court on August 25, 1993; $112.00 paid to the clerk of the circuit court on July 30, 1992; and $39.38 paid to the Summit Club on December 3, 1992.

**37.** *Id.*

**38.** The court should not be understood to suggest that a party's fee and expense submission should

never be subject to a thorough look-behind investigation. Although "[a] request for attorney's fees should not result in a second major litigation," *Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941, instances may arise that will warrant an investigation broader and more extensive than that which would be reasonably expected to resolve the issues presented. This is not such a case.