Anthony T. LEE, et al., Plaintiffs,

United States of America, Plaintiff–
Intervenor and Amicus Curiae,

National Educational Association,
Inc., Plaintiff–Intervenor,

v.

RANDOLPH COUNTY BOARD
OF EDUCATION, et al.,
Defendants.

Civ. A. No. 847–E.

United States District Court,
M.D. Alabama,
Eastern Division.

April 26, 1995.

Solomon S. Seay, Jr., Montgomery, AL, for plaintiffs and intervenor-plaintiff.

Sabrina Whitehead Jenkins, Dana R. Carstarphen, Jeremiah Glassman, LeVern M. Younger, Steven Butler, Derek Loeser, U.S. Dept. of Justice, Civil Rights Div., Educational Opportunities Section, Deval L. Patrick, U.S. Dept. of Justice, Civil Rights Div., Special Litigation Section, Isabelle Katz Pinzler, Poli A. Marmolejos, Civil Rights Div., U.S. Dept. of Justice, Washington, DC, for U.S.

George Lamar Beck, Jr., Dennis Richard Pierson, William Terry Travis, Beck & Travis, P.C., Montgomery, AL, for defendant.

## *ORDER*

MYRON H. THOMPSON, Chief Judge.

This longstanding school desegregation lawsuit was reopened last year when the plaintiffs—black school children and parents representing a class of people similarly situated—and plaintiff-intervenor United States filed motions for further relief alleging that defendant Randolph County Board of Education and its officials had violated prior desegregation orders and federal law. The court eventually approved a consent decree governing operations of the Randolph County school system and an amendment to the consent decree concerning the former principal of Randolph County High School, Hulond Humphries. This cause is now before the court on a motion by the plaintiffs for attorney's fees and expenses pursuant to 42 U.S.C.A. § 1988 (West 1994). The plaintiffs request a total of $111,184.19 for attorney's fees and expenses.[1] For the reasons that follow, the court concludes that the motion should be granted and that the plaintiffs are entitled to recover attorney's fees and expenses in the amount of $108,983.69.

## I. BACKGROUND

The extensive past history of this lawsuit, which has been ongoing for approximately 30

---

1. The plaintiffs' fee request may be broken down as follows:

| | | | |
|---|---|---|---|
| Fees: | Seay | 380.50 hours × $250 = | $95,125.00 |
| | Thomas | 29.50 hours × $225 = | 6,637.50 |
| Expenses: | Seay | | 8,773.49 |
| | Thomas | | 648.20 |
| TOTAL | | | $111,184.19 |

years, can be summarized by noting that, starting in 1967, prior orders of a three-judge court required the Randolph County School District to desegregate its school system.[2]

The present phase of this lawsuit began last year when the United States and the plaintiffs filed motions for further relief. They alleged that Randolph County school officials had violated prior desegregation orders and federal law by engaging in racially discriminatory practices and failing to operate the schools on a nondiscriminatory basis. The plaintiffs and the United States contended that desegregation orders were not implemented in the areas of faculty and administrative hiring, discipline, and curriculum, and that the Randolph County School District and Humphries, who was principal of Randolph County High School from 1968 to 1994, had created a racially hostile environment.

After extensive negotiations, the parties submitted a consent decree which the court approved on December 15, 1994. The decree addressed many aspects of the operation of schools in Randolph County to ensure compliance with prior court orders and federal law. The consent decree left open the question of Humphries's future employment with the school district.

The parties later reached an agreement regarding Humphries, which provided that he be employed as a consultant to the Randolph County Board of Education until July 1997, with duties to be assigned by the school board. The amendment prevented Humphries from appearing on school campuses during school hours except for attending events open to the general public. The court subsequently received a letter and motion from Reverend Emmett T. Johnson stating that Solomon Seay, the attorney for the plaintiffs, had not consulted the African–American community before agreeing to the amendment and that some members of the plaintiff class opposed the settlement. The

court held a fairness hearing to give the citizens of Randolph County, in particular black school children and parents, an opportunity to voice their concerns about the amendment to the decree. The court also heard testimony from plaintiffs' attorney Seay to the effect that his representation had been adequate and that the amendment should be approved. The court approved the amendment to the consent decree on February 17, 1995. *Lee v. Randolph County Bd. of Educ.*, 160 F.R.D. 642 (M.D.Ala.1995).

## II. DISCUSSION

The attorney's fee provision of 42 U.S.C.A. § 1988 (West 1994) authorizes courts to award reasonable attorney's fees to prevailing civil rights litigants. The school board does not contest that the plaintiffs are a prevailing party and are entitled to reasonable attorney's fees and expenses. Case law supports this view. *E.g., Farrar v. Hobby*, —— U.S. ——, ——, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992); *Miller v. Carson*, 628 F.2d 346 (5th Cir.1980).[3]

■ The starting point in setting any attorney's fee is determining the "lodestar" figure—that is, the product of the number of hours reasonably expended to prosecute the lawsuit and the reasonable hourly rate for work performed by similarly situated attorneys in the community. After calculating the lodestar fee, the court should then proceed with an analysis of whether any portion of this fee should be adjusted upwards or downwards. *Hensley v. Eckerhart*, 461 U.S. 424, 433–34, 103 S.Ct. 1933, 1939–40, 76 L.Ed.2d 40 (1983).

■ In making the above determinations, the court is guided by the 12 factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974). *See Blanchard v. Bergeron*, 489 U.S. 87, 91–

2. *Lee v. Macon County Bd. of Educ.*, 267 F.Supp. 458 (M.D.Ala.) (three-judge court) (per curiam), *aff'd mem.*, 389 U.S. 215, 88 S.Ct. 415, 19 L.Ed.2d 422 (1967); order of June 16, 1970 (three-judge court).

3. In *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit

Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

92, 109 S.Ct. 939, 943–44, 103 L.Ed.2d 67 (1989); *Hensley,* 461 U.S. at 434 n. 9, 103 S.Ct. at 1940 n. 9. These factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of professional relationship with the client; and (12) awards in similar cases.

### A. Reasonable Hours

Seay was the primary attorney for the plaintiffs in this matter. He seeks compensation for 380.5 hours. Kenneth Thomas served as special counsel for the plaintiffs during the fairness hearing because of the challenge to Seay's representation, which required Seay to testify at the hearing. Thomas seeks compensation for 29.5 hours.[4]

The court considers three *Johnson* factors—the time and labor required, the novelty and difficulty of the case, and the amount involved and the result obtained—in assessing the reasonableness of the hours claimed. As to the time and labor required, the school board does not challenge the reasonableness of most of the hours expended. The board objects only to (1) the hours expended by Seay and Thomas resulting from discord within the plaintiff class; (2) duplication of some hours between Seay and Thomas; and (3) 9.9 hours submitted by Seay for preparation and review of interrogatories.

■ The court turns first to the question of the hours expended to deal with the split in the class. The school board contends that it should not be responsible for time spent by class counsel in addressing internal discord within the plaintiff class and between members of the class and class counsel. The court has previously noted that "defendants who are completely removed from the activi-

ties giving rise to an expenditure of effort by plaintiffs and who affirmatively stake out a neutral position during the dispute between the plaintiffs and some third party should not be held responsible for the fees incurred by counsel." *Paradise v. McHenry,* 809 F.Supp. 899, 904 (M.D.Ala.1992) (discussing *Reeves v. Harrell,* 791 F.2d 1481, 1483–84 (11th Cir.1986), *cert. denied,* 479 U.S. 1033, 107 S.Ct. 880, 93 L.Ed.2d 834 (1987)). Unlike the situation described in *Paradise,* however, this lawsuit does not involve a dispute between the plaintiffs and a third party. Although it has been unable to locate any cases that directly discuss the situation of this lawsuit, the court finds that attorney's fees are available for the time spent addressing disputes within a class even when the adequacy of representation is an issue.

■ It is true that the school board did not cause the split in the plaintiff class. This does not resolve the question, however. It is settled law that plaintiffs are a prevailing party entitled to attorney's fees if relief is achieved through a consent decree. *E.g., Farrar,* —— U.S. at ——, 113 S.Ct. at 573. It follows from this principle that, in those class actions where court approval is necessary before a consent decree may be entered, plaintiffs should be allowed to recover fees incident to the negotiation and approval process. The question for the court, therefore, is whether the time Seay and Thomas spent in addressing the split within the class was a recoverable part of the negotiation and approval process.

■ In general, before approving a consent decree that affects a class, the court must solicit and consider the views of class members, including those members who disagree with the decree, pursuant of Rule 23(e) of the Federal Rules of Civil Procedure. *See, e.g., Pettway v. American Cast Iron Pipe Co.,* 576 F.2d 1157, 1169, 1214, 1217 (5th Cir.1978), *cert. denied,* 439 U.S. 1115, 99 S.Ct. 1020, 59 L.Ed.2d 74 (1979). The court also considers the views of class counsel. *E.g., White v. State of Alabama,* 867 F.Supp. 1519, 1533 (M.D.Ala.1994). "Where there is

---

**4.** Although in his affidavit Thomas claims 40.5 hours, the hours listed total 29.5. The court therefore treats Thomas's request for compensation as being for 29.5 hours.

disagreement among the class members concerning an appropriate course of action, it may be impossible for the class attorney to do more than act in what he believes to be the best interests of the class as a whole." *Pettway,* 576 F.2d at 1216. Class counsel must weigh competing views and decide what is the best course of action before presenting a recommendation on a consent decree to the court. Sometimes this will entail discussions and negotiations with dissident class members in an attempt to reach common ground. Failing such an agreement, it is appropriate, as part of the negotiation and approval process, that an attorney receive reasonable fees for time spent in explaining a decree to dissident class members, in attempting to win their support, and, absent such support, in defending a decree at a fairness hearing against objections from these class members. Indeed, both plaintiffs and defendants bear the burden of proving to the court that a consent decree is in the best interests of the class, even dissident members.

This lawsuit differs from the standard class action in which there is class discord only in that the disagreement among the class included a challenge to the adequacy of the attorney for the class. Objections to a consent decree will often take the form of not only a challenge to the decree itself, but a challenge to the adequacy of the attorneys for the class who negotiated the decree. Both challenges often essentially boil down to the merits of the decree. The court therefore sees no reason to deny fees simply because class counsel must address at a fairness hearing the adequacy of representation among other issues causing a split in the class.

■ The court notes that the purpose of allowing attorney's fees in civil rights cases "is to ensure the effective enforcement of the civil rights laws, by making it financially feasible to litigate civil rights violations." *Dowdell v. City of Apopka,* 698 F.2d 1181, 1189 (11th Cir.1983). Class action civil rights cases are important to the enforcement of civil rights laws. The court will not create disincentives for attorneys to take on class actions that might require difficult and protracted negotiations with class members, perhaps culminating in irreconcilable differences and charges of inadequate representation. It might be a different matter if the court found that Seay had not adequately represented the class or if Seay had tried to get out of the decree and failed. Here, however, Seay performed a necessary duty with successful results. Accordingly, the court finds that the time spent by Seay and Thomas handling the discord in the class and the fairness hearing is appropriately charged to the school board.

The school board's second objection is that Seay's and Thomas's hours were duplicative. Although there appears to be some minor overlap on the days in question, that overlap is not unreasonable. The school board's third objection is that Seay billed excessive hours for the preparation of interrogatories. Although 9.9 hours seems high, in light of the generally conservative nature of Seay's billing, the court will not reduce these hours.

■ The court has conducted an independent review of the hours claimed to determine if there was any time that should be excluded because it was "excessive, redundant, or otherwise unnecessary." *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1939–40. The court is satisfied that the hours listed appear to have been necessary to securing relief in this case. The court further finds that the issues Seay confronted ranged from straightforward to difficult and that he was required to confront highly skilled attorneys for the school board. The issue of adequate representation that Thomas confronted was not complex but was ably handled on short notice. Finally, the court finds that the plaintiffs successfully obtained most of what they sought in this litigation. Based on this analysis, the court concludes that the attorneys are entitled to the full number of hours claimed: Seay for 380.5 and Thomas for 29.5.

### B. Prevailing Market Rate

■ "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Housing Authority of Montgomery,* 836 F.2d 1292, 1299 (11th Cir.1988). Seay contends he is entitled to

$250 an hour; Thomas contends he is entitled to $225 an hour. To determine the prevailing market rate, the court will consider the following *Johnson* factors: customary fee; whether the fee is fixed or contingent; the novelty and difficulty of the questions; the skill required to perform the legal services properly; the experience, reputation, and ability of the attorneys; time limitations; preclusion of other employment; undesirability of the case; nature and length of professional relationship with the client; and awards in similar cases.

*Customary Fee:* Seay contends that the customary fee for school desegregation cases is $175–$250 an hour. The evidence supports this contention.

*Fixed or Contingent Fee:* There was no written agreement which would demonstrate the attorney's fee expectations.

*Novelty and Difficulty of the Questions:* Although the court believes that all school desegregation cases are challenging, this case was not sufficiently difficult to justify an enhancement on this basis.

*Skill Required to Perform the Legal Services Properly:* School desegregation cases require skilled plaintiffs attorneys, particularly when the defense attorneys, as in this case, are highly skilled.

*Experience, Reputation, and Ability of the Attorneys:* The court has previously noted that "Seay is generally considered to be, in the area of school-related litigation, one of the most experienced and respected members in the Alabama legal community." *Robinson v. Alabama State Dept. of Educ.,* 727 F.Supp. 1422, 1428 (M.D.Ala.1989), *aff'd,* 918 F.2d 183 (11th Cir.1990) (table). Thomas has had considerable experience in civil rights litigation.

*Time Limitations:* Where there has been "[p]riority work that delays the lawyer's other legal work," this factor requires "some premium." *Johnson,* 488 F.2d at 718. The case was litigated in a compressed period of time.

*Preclusion of Other Employment:* This factor "involves the dual consideration of otherwise available business which is foreclosed because of conflicts of interest which occur from the representation, and the fact that once the employment is undertaken the attorney is not free to use the time spent on the client's behalf for other purposes." *Johnson,* 488 F.2d at 718. There is not enough evidence to support this factor.

*Undesirability of the Case:* In general, civil rights litigation is seen "as very undesirable because it stigmatizes an attorney as a 'civil rights lawyer' and thus tends to deter fee-paying clients, particularly high-paying commercial clients, from seeking assistance from that lawyer." *Stokes v. City of Montgomery,* 706 F.Supp. 811, 815 (M.D.Ala.1988), *aff'd,* 891 F.2d 905 (11th Cir.1989) (table).[5]

*Nature and Length of Relationship with Client:* Seay has been involved in this lawsuit since its inception three decades ago. Thomas has no previous involvement in this case.

*Awards in Similar Cases:* Over the last five years, the court has awarded non-contingent fees in the range of $105–290 an hour in other civil rights cases. *See, e.g., Stokes v. City of Montgomery,* 157 F.R.D. 514, 519 (M.D.Ala.1994); *Medders v. Autauga County Bd. of Educ.,* 858 F.Supp. 1118, 1129 (M.D.Ala.1994); *Wyatt v. King,* no. 3195–N, 1991 WL 640065, at *3 (M.D.Ala. Dec. 17, 1991), *aff'd,* 985 F.2d 579 (11th Cir.1993) (table); *Robinson,* 727 F.Supp. at 1428.

The court has awarded rates similar to that requested by Seay to attorneys of comparable reputation in other fields. For example, the court awarded expert voting rights attorneys Jim Blacksher and Ed Still $290 an hour in *Medders,* 858 F.Supp. at 1129. Over five years ago, the court awarded Seay $150 an hour with a 100% upward adjustment for an effective rate of $300 an hour for his work on school-related litigation. *Robinson,* 727 F.Supp. at 1429, 1433.

Thomas is entitled to compensation in the middle of the general civil rights range and

---

**5.** *See also Medders v. Autauga County Bd. of Educ.,* 858 F.Supp. 1118, 1128 (M.D.Ala.1994); *Robinson,* 727 F.Supp. at 1428.

at the lower end of the school desegregation range for the straightforward work he undertook.

The court is of the opinion, based on these criteria, that Seay is entitled to $250 an hour and Thomas is entitled to $175 an hour.

### C. Lodestar Calculation

The unadjusted lodestar for an attorney consists, as stated, of the product of the attorney's compensable hours multiplied by the prevailing market fee. The lodestars for plaintiffs' counsel are therefore as follows:

| | | |
|---|---|---|
| Seay | 380.5 hours × $250 = | $ 95,125.00 |
| Thomas | 29.5 hours × $175 = | $ 5,162.50 |
| TOTAL | | $100,287.50 |

### D. Adjustment

■ An adjustment of the lodestar either upward or downward is unwarranted. The school board argues that the court should consider the precarious financial condition of the school district. Even assuming that this factor is proper for the court's consideration, the court is not convinced that, in this case, this concern overrides the directive of 42 U.S.C.A. § 1988 to award attorney's fees to successful civil rights plaintiffs.

### E. Expenses

■ Seay seeks $8,773.49 and Thomas seeks $648.20 for expenses incurred in connection with the litigation.[6] With the exception of routine overhead office expenses normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation or as an aspect of settlement of the case, may be taxed as costs; the standard of reasonableness is to be given a liberal interpretation.

*NAACP v. City of Evergreen,* 812 F.2d 1332, 1337 (11th Cir.1987); *Dowdell v. City of Apopka,* 698 F.2d 1181, 1192 (11th Cir.1983).

■ Because the school board objected to some of the expenses, the court ordered the plaintiffs to clarify their request. Based on this clarification, the court finds that the only objection with merit is with regard to the $3,223.05 in fees and expenses Seay requests for expert witness Gregory B. Stein. Of this amount, Seay requests fees of $3,082.50 for 13.70 hours at $225 an hour. The remaining $140.55 is for Stein's expenses. The school board does not object to Stein's hours, but does object to the requested rate. The court notes that Stein received a rate of $200 an hour for his legal work in *Knight v. State of Alabama,* 824 F.Supp. 1022, 1032–33 (N.D.Ala.1993). A lower hourly rate is appropriate in this lawsuit because of his limited role. The court finds that Stein is entitled to $175 an hour. The total fee for 13.70 hours at $175 an hour is $2,397.50. The requested $140.55 in expenses for Stein appears reasonable. Accordingly, the court finds that Seay is entitled to $2,538.05 for the fee and expenses of Stein.

Seay's and Thomas's remaining expenses include costs for depositions, witnesses, long distance telephone calls, fax transmissions, photocopying, travel, and postage. These general expenses total $6,158.14.[7] Because the general expenses appear to be necessary and reasonable, the court determines that these expenses are recoverable. Adding the expenses for Stein and the general expenses, the court finds that the plaintiffs are entitled to recover a total of $8,696.19 in expenses.

---

**6.** These are the amounts requested in the motion for attorney's fees and expenses filed on February 22, 1995 and supplemented on March 1, 1995. By order of April 17, 1995, the court requested additional information on these expenses. The plaintiffs responded on April 24, 1995, with a list of expenses that, although responsive to the court's order, also included expenses requested in the plaintiffs' supplemental motion for attorney's fees and expenses filed on April 3, 1995, which is not under submission until May 3, 1995. The court now considers only the expenses requested in the February 22 and March 1 filings. Unfortunately, when the court compared the expenses requested in these two filings with what the plaintiffs represented in their April 24 submission to be the total of the

February 22, March 1, and April 3 filings, the court found some minor discrepancies. The court has resolved all such discrepancies against the plaintiffs.

**7.** Seay is entitled to recover $3,316.15 for depositions, $317.50 for travel, $530 for witnesses, $418.50 for fax transmissions, $219.79 for telephone calls, $56.50 for Federal Express delivery, $637.50 for copies, and $49.00 for copies at the courthouse. Thomas is entitled to recover $613.20 for expenses related to serving subpoenas. The court reached these figures based on the plaintiffs' filings on February 22, March 1, and April 24, 1995.

Accordingly, for the above reasons, it is ORDERED that the motion for attorney's fees and expenses, filed by the plaintiffs on February 22, 1995, supplemented on March 1, 1995, and further clarified on April 24, 1995, is granted, and that the plaintiffs have and recover from defendant Randolph County Board of Education, the sum of $100,287.50 for attorney's fees and $8,696.19 for expenses, for a total of $108,983.69.