992 F.Supp. 1328 (1997)
R.C., by his next friend, the ALABAMA DISABILITIES ADVOCACY PROGRAM, on behalf of himself and those similarly situated, Plaintiffs,
v.
Martha NACHMAN, Commissioner of the Alabama Department of Human Resources, Defendant.
No. CIV. A. 88-D-1170-N.
United States District Court, M.D. Alabama, Northern Division.
October 28, 1997.
*1329 Ralph S. Tyler, Patrick J. Reynolds, Hogan & Hartson, Baltimore, MD, Ira A. Burnim, Bazelon Ctr. for Mental Health Law, Washington, DC, David Schoen, James Tucker, Montgomery, AL, Richard Cohen, Southern Poverty Law Center, Montgomery, AL, for Plaintiffs.
John J. Park, Jr., Deputy Attorney General, Montgomery, AL, Kathy P. Brasfield, Assistant Attorney General, Montgomery, AL, Mark G. Montiel, Montgomery, AL, for Defendant.

MEMORANDUM OPINION AND ORDER
DE MENT, District Judge.
Before the court is Plaintiff's Motion for Attorneys' Fees and Costs, filed January 9, 1997. Plaintiffs request that the court order Defendant to pay Plaintiffs' attorneys' fees and costs in the amount of $249,480.68 for legal work conducted by Plaintiffs' counsel from July 1995 through July 1996. The amount requested is based on hourly rates of $275 for lead counsel Ira Burnim and $200 for secondary counsel James Tucker and Shelley Jackson. Defendant filed an objection to Plaintiffs' Motion on January 31, 1997. Plaintiffs replied to Defendant's objection on March 25, 1997. Plaintiffs' reply addressed only the issue of the hourly rates to which Plaintiffs' counsel are entitled. Plaintiffs suggest that the narrower issues of whether work on particular items is compensable might be resolved between the parties or, failing that, referred by the court to a Magistrate Judge for resolution.
After careful consideration of the arguments of counsel, the relevant law and the record as a whole, the court finds that, for the reasons set forth below, Plaintiffs are due to be paid an hourly rate of $250 per hour for lead counsel and $175 for secondary counsel. The court reserves judgment on the other matters, pending possible resolution by the parties.

I. BACKGROUND
In November 1988, Plaintiffs commenced the above styled action by filing a complaint against Andy Hornsby, then Commissioner of the Alabama Department of Human Resources ("DHR"), complaining of constitutional and federal statutory violations in DHR's child welfare system. On December 18, 1991, the court approved a Consent Decree intended to address the Plaintiffs' injuries and transform the child welfare system. Rather than setting out the precise means for accomplishing these objectives, the Consent Decree sets forth "goals" and a "system of care" consisting of "operating principles" or "standards" designed to achieve the goals. The Consent Decree requires "the development of a comprehensive array of services *1330 for class members over a period of seven years," and is set to terminate on October 1, 1999, when and if substantial compliance is achieved. In essence, the Consent Decree establishes an eight-year Implementation Plan and a series of policies "acceptable to" Plaintiffs. The Consent Decree has subsequently been supplemented by a series of orders and agreements.
The Consent Decree recognizes that "[p]laintiffs are `prevailing parties' in this litigation" entitled to attorneys' fees. (Consent Decree at 34-35, ¶¶ 72-73.) The following provisions of the Consent Decree address the attorneys' fees to be awarded:
88. Plaintiffs are "prevailing parties" in this litigation and shall recover (a) the expenses of their counsel and (b) a reasonable attorneys' fee.
89. The parties shall negotiate in good faith the amount of plaintiffs' recovery of expenses and attorneys fees. If a settlement is not reached by August 1 1991, plaintiffs may file a petition with the court for an award of expenses and attorneys fees. Plaintiffs shall not file any such petition during the parties' negotiations up to and including August 1, 1991.
90. Plaintiffs' counsel are entitled to be reimbursed by the defendant for expenses and time reasonably expended by plaintiffs' counsel in the course of:
a. Monitoring or securing the implementation of this decree or the Implementation Plan;
b. Efforts to promote the development of, and/or negotiations concerning, the Implementation Plan; or
c. Opposing efforts by defendant or others to modify or vacate this decree or the Implementation Plan.
Footnote 65 of the Consent Decree references the term "reasonable" in ¶ 88. It states:
The hourly fee for work performed by attorney Burnim shall be no less than $110 and no more than $150; the hourly fee for attorneys Shoen, Jackson, and Johnson shall be no less that $90 and no more than $125.
Footnote 68 references reimbursement contemplated by ¶ 90 of the Consent Decree. It states:
The hourly rate and expenses of both plaintiffs' counsel and their agents, including experts, shall be a reasonable one. The defendant may challenge as unreasonable any reimbursement sought by plaintiffs' counsel. Disputes that cannot be resolved by mutual consent will be resolved by the court.
On December 18, 1991, the court entered an Order of attorneys fees. The court ordered payment in the amount of $600,000 for the settlement of all attorneys' fees and expenses of Plaintiffs through July 25, 1991. The court further ordered that, pursuant to ¶ 90 of the Consent Decree, Plaintiffs submit to Defendant a request for fees and expenses through December 31, 1991. The amount submitted and agreed upon by the parties was within the hourly range included in footnote 65 of the Consent Decree. The court further ordered that Plaintiffs were "entitled to recover reasonable fees and expenses for work done after July 25, 1991, pursuant to paragraph 90 of the Consent Decree." (December 18, 1991 Order, ¶ 2.)
The December 18, 1991 Order establishes a mechanism for request and payment of fees and costs. Plaintiffs are required to submit to DHR monthly itemized requests. After receipt of the requests, DHR is required to inform Plaintiffs in writing of each item of time or expense about which it needs more information and provide written objections to each item or time or expense to which DHR objects. (Id. at ¶ 4-5.)
The December 18, 1991 Order further states that the parties shall "attempt to negotiate and resolve by mutual consent any difference they may have regarding the reasonableness of a request for additional information or regarding an objection to an item of time or expense claimed by plaintiffs. If the parties are unable to resolve their difference, either Plaintiffs or Defendants may seek resolution of the dispute by the court (which may in its discretion refer the matter to a Magistrate or mediator)." (December 18, 1991 Order, ¶ 8.) This Order is effective until October 1, 1999. (Id. at ¶ 2(d).)
*1331 On February 25, 1993, Plaintiffs' counsel submitted to Defendant their claims for fees and expenses for the month of December 1992. The rates originally requested therein were in excess of the range contained in ¶ 65 of the Consent Decree. Defendant objected to the amount requested, and the parties eventually agreed upon an amount that was within the range included in ¶ 65.
Plaintiffs counsel and Defendant entered into an agreement capping Plaintiffs' counsel's monthly amount of compensation to $9,200.00 for the months of January 1993 through June 1995. On October 29, 1993, the parties agreed to raise the monthly compensation to $10,200.00 for work performed beginning August 1, 1993 until June 1995.
This fee agreement expired on June 30, 1995. Thereafter, Plaintiffs' counsel submitted fee requests to Defendant on a monthly basis. Defendant submitted a written response to Plaintiffs' counsel, in accordance with the court's December 18, 1991 Order, indicating the items to which Defendant objected, believing them to be incompensable, and items for which Defendant needed additional information. The parties were unable to resolve these disputes.
On or about April 17, 1996, Plaintiffs filed a Motion for Enforcement and Additional Relief in this matter, addressing, in part, the issue of payment of Plaintiffs' counsel's fees. Defendant responded to Plaintiffs' motion on May 23, 1996. Plaintiffs' April 17, 1996 motion requests payment for "uncontested time" for the months of July 1995 to January 1996, as well as a process for resolving disputes concerning Plaintiffs' fees bills for July 1995 to January 1996.
On October 2, 1996, the court entered an Order in which it reserved its ruling on most of the issues before it. The court made an interim finding that Plaintiffs' counsel Burnim was entitled to reimbursement in the sum of not less that $13,090.00 and Plaintiffs' counsel Tucker was entitled to reimbursement of no less than $37,827.00 for uncontested time expended or expenses incurred from July 1995 through January 1996. (October 2, 1996 Order.) These amounts were based on the uncontested finding that Mr. Burnim was entitled to be reimbursed at a rate not lower than $110 and Mr. Tucker at a rate not lower than $90. (October 2, 1996 Order.)
Currently before the court is Plaintiffs' motion, filed January 9, 1997, requesting an order directing Defendant to pay Plaintiffs' counsel's fees and costs in the amount of $249,480.68 for activities undertaken through July 1996. Plaintiffs seek resolution of disputes surrounding: (a) Plaintiffs' monitoring and implementation activities during July 1995 to July 1996; (b) Plaintiffs' March 1995 litigation efforts that secured the continued employment of DHR Special Child Welfare Consultant Linda Bayless; and (c) Plaintiffs' work in June and July 1996 preparing the memorandum for its Motion for Attorneys Fees. (Pl.'s Mot. for Att'ys Fees and Costs, January 9, 1997.) Defendant responded by contesting the hourly rate sought by Plaintiffs' counsel and objecting to specific items and areas of work for which Plaintiffs' counsel sought recovery.
Defendant contends that the Consent Decree specifies a range of hourly fees at which Plaintiffs' counsel are to be compensated for the activities detailed in ¶ 90 of the Consent Decree. Specifically, Defendant asserts that the Consent Decree requires compensation for Plaintiffs' secondary counsel at hourly fees of "no less than $90 and no more than $125 per hour" and hourly fees of "no less than $110 and no more than $150" for work performed by Plaintiffs' lead counsel, Ira Burnim. Defendant asserts that Plaintiffs' current request for payment of attorneys' fees in the amount of $275 for lead counsel and $200 for secondary counsel far exceeds those agreed to by the parties in the Consent Decree. (Def.'s Obj. to Pls.' January 9, 1997 Mot. for Att'ys Fees at ¶ 3.) Defendant contends that the fee range provided for footnote 65 of the Consent Decree determines all past and future attorneys' fees awarded in this matter.
Plaintiffs contend that footnote 65 does not govern the amount of attorneys fees Plaintiffs' counsel is entitled to for work subsequent to the Consent Decree. Rather, Plaintiffs contend that Plaintiffs' counsel is entitled to a fee based on "reasonable hourly *1332 rates." (Pls.' Mem. in Supp. of Their Mot. for Att'ys Fees and Costs ("Pls.' Mem.") at 32.) Rather than being limited to the range of fees set out in footnote 65 of the Consent Decree, Plaintiffs contend that they are limited by a standard of "reasonableness" as defined by the Eleventh Circuit. According to Plaintiffs, Defendant's assertion that Plaintiffs' counsel are entitled to hourly rates no higher than the rates specified in the Consent Decree is inconsistent with the plain language of the Consent Decree, as those rates were intended to describe the acceptable range of "reasonable" fees for pre-settlement work. (Pls.' Mem. at 34.)

II. DISCUSSION

A. Plaintiffs' Fees are Not limited to the Amount Set Forth in Footnote 65 of the Consent Decree

The court finds that the hourly rate Plaintiffs' counsel is entitled to is not limited to the amount specified in footnote 65 of the Consent Decree. Rather, Plaintiffs' counsel is entitled to an amount "reasonable" in relation to the "prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation." Norman v. Housing Auth., 836 F.2d 1292, 1299 (11th Cir.1988).
A contract of consent must be enforced as written, and, unless the language is ambiguous, there can be no departure from its "four corners." See United States v. ITT Continental Baking Co., 420 U.S. 223, 236, 238, 95 S.Ct. 926, 43 L.Ed.2d 148 (1975). The court finds that the language of the Consent Decree does not bind Plaintiffs' counsel's rates for reimbursement for time expended implementing and monitoring the Consent Decree to the range of fees deemed "reasonable" for pre-settlement work. Rather, the Consent Decree contemplates a "reasonable" fee which may be determined exclusive of that deemed "reasonable" for pre-settlement work.
The plain language of the Consent Decree specifies a range of "reasonable fees" to be paid to Plaintiffs' counsel for work done prior to the settlement. Paragraphs 88 and 89 of the Consent Decree contemplate Plaintiffs' counsel's recovery of fees and expenses for work "to date," as of the June 11, 1991 Decree. As the "prevailing party," Plaintiffs were awarded recovery for the expenses and fees of their counsel for work performed in connection with the litigation culminating in the Consent Decree. Footnote 65 of the Decree, setting out a range of "reasonable" fees to be paid Plaintiffs' counsel, defines "reasonable" in ¶ 88. Footnote 65's reference to the fees to be reimbursed for work performed prior to the Consent Decree precedes the discussion of reimbursement for work contemplated in the implementation of the Consent Decree. Thus, the "reasonable" fee contemplated in Footnote 68 is exclusive of that defined in footnote 65.
In their instant motion for payment of fees, Plaintiffs' counsel are seeking recovery for fees that they are entitled to receive in accordance with ¶ 90 of the Consent Decree. Plaintiffs counsel are seeking recovery for expenses and time expended: (1) "monitoring and implementation activities" during July 1995 to July 1996; (2) litigation efforts to secure the continued employment of DHR Special Child Welfare Consultant, Linda Bayless; and (3) work preparing the Motion for Fees and Costs. (Pls.' Mot. for Att'ys Fees and Costs at 1.) Plaintiffs' counsel's recovery for these fees and expenses is limited to a "reasonable" amount, as well. (Consent Decree at ¶ 90 n.68.) However, the definition of "reasonable" for the hourly rate for which Plaintiffs' counsel is entitled pursuant to ¶ 90 of the Consent Decree is different from the definition of "reasonable" fees recovered pursuant to ¶¶ 88 and 89 of the Consent Decree. To read Footnote 68 any other way renders it superfluous.

B. Determination of a Reasonable Rate

The court now turns to the "reasonableness" of the fee requested. Plaintiffs have requested an attorney's fee for lead counsel in the amount of $275 per hour, and secondary counsel in the amount of $200 per hour.
The starting point in setting any attorney's fee is determining the "lodestar" figure  that is, the number derived by multiplying hours reasonably expended to prosecute *1333 the lawsuit by a reasonable hourly rate. Hensley v. Eckerhart, 461 U.S. 424, 433-34, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Here, the court reserves judgment on determining the "reasonable hours" expended by Plaintiffs' counsel, and instead focuses its determination on the "reasonable hourly rate" to which Plaintiffs' counsel is entitled.
A rate is reasonable if such rate "is the prevailing market rate in the legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Knight v. State of Alabama, 824 F.Supp. 1022, 1027 (N.D.Ala.1993) (quoting Blum v. Stenson, 465 U.S. 886, 895-96 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)). In determining the amount of a reasonable award in this case, the court will follow the guidelines established in Norman v. Housing Auth., 836 F.2d 1292 (11th Cir.1988).[1] In Norman, the Eleventh Circuit stated that the factors contained in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-719 (5th Cir.1974), are useful for establishing a reasonable hourly rate. Id at 1299. Thus, as an aid in determining the reasonableness of Plaintiffs' request, the court is guided by the twelve factors enumerated in Johnson, 488 F.2d at 717-719,[2] which are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. See Norman, 836 F.2d at 1299 (stating that Johnson factors still have utility in establishing an hourly rate, although the district court may consider the relevance of the various factors to the case before it and weigh them accordingly).
In this case, Plaintiffs have the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates. Where there is a lack of documentation, however, the court is not relieved of its obligation to award a reasonable fee. Rather, "[t]he court ... is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." Id. at 1303 (quoting Campbell v. Green, 112 F.2d 143, 144 (5th Cir.1940)). The court may make an award without further pleadings or an evidentiary hearing. Id. Here, Plaintiff has provided the court with ample documentation to make the necessary determination.
Considering the prevailing market rate as understood by the court, Plaintiffs' counsel's respective levels of experience, the degree of novelty and difficulty of the issues involved, the result achieved by Plaintiffs, and the nature and length of counsel's relationship with the clients, the court finds a reasonable hourly rate to be $250 an hour for Plaintiffs' lead counsel and $175 for Plaintiffs' secondary counsel in the instant action.

(1) prevailing market rate and awards in similar cases

Generally, when considering the customary fee, the relevant legal community is the area in which the court sits. See Turner v. Secretary of Air Force, 944 F.2d *1334 804, 808 (11th Cir.1991); Norman, 836 F.2d at 1305. In this case, the court finds that the state-wide nature of this litigation requires the court to consider the state of Alabama as the relevant legal community. See Gay and Lesbian Bisexual Alliance v. Sessions, 930 F.Supp. 1492 (M.D.Ala.1996).
Plaintiffs include affidavits of counsel performing the work, along with affidavits of other attorneys familiar with rates reasonable for the nature of work performed by Plaintiffs' counsel. (Decl. of Robert D. Segall at 3; Decl. of Martha Matthews.) In addition, Plaintiffs cite numerous cases upon which they base the "customariness" of their fee request. (Pls.' Mem. In Supp. of their Mot. For Att'ys Fees and Costs at 33.) In these cases, the rates charged for attorneys working on similarly complex cases in Alabama were similar to the fees requested by Plaintiffs in the instant action.
The court may properly consider fees awarded in other recent civil rights cases in Alabama. See Johnson, 488 F.2d at 719; Gay Lesbian Bisexual Alliance, 930 F.Supp. at 1498. Based on non-contingent fees awarded in similar litigation in the Middle District of Alabama, the court finds that Plaintiff's counsel is reasonably compensated at the rate of $250 an hour for lead counsel and $175 an hour for secondary counsel. See Gay Lesbian Bisexual Alliance, 930 F.Supp. at 1498 (gay and lesbian rights case awarding attorneys fees at the rate of $225 and $200 an hour); Reynolds v. Alabama Dep't of Transp., 926 F.Supp. 1448 (M.D.Ala.1995)(civil rights case awarding attorneys fees at the rate of $250 an hour); Lee v. Randolph County Bd. Of Educ., 885 F.Supp. 1526, 1532 (M.D.Ala.1995)(school desegregation case awarding attorneys fees at rates of $250 and $175 an hour); Medders v. Autauga County Bd. Of Educ., 858 F.Supp. 1118, 1128 (M.D.Ala.1994)(voting rights case awarding attorneys fees at the rate of $290 per hour); Knight v. State of Ala., 824 F.Supp. 1022 (N.D.Ala.1993)(civil rights case awarding attorneys fees at the rate of $275 per hour); Lawrence v. City of Talladega No. 91-C-1340-M, 1993 WL 739666, at *1 (N.D.Ala. May 14, 1993)(voting rights case awarding attorneys fees at the rate of $200 an hour).

(2) respective levels of experience, reputation and ability of attorneys

The court notes that attorneys Burnim, Tucker and Jackson are all very experienced in complex class action litigation involving civil rights, and the court properly considered these facts in determining a reasonable hourly rate. Mr. Burnim, the legal director for the Bazelon Center for Mental Health Law, is an experienced civil rights attorney who has been engaged in the practice of law for approximately twenty years. He has litigated numerous class action cases involving the rights of the mentally disabled, as well as numerous other class action cases involving civil rights. Mr. Tucker has been practicing civil rights law for over eleven years. Since 1992, Mr. Tucker has represented civil rights plaintiffs through his work at the American Civil Liberties Union of Alabama. Ms. Jackson, a staff attorney at the Bazelon Center during the period of time covered by Plaintiffs' request for fees, has been involved in the practice or teaching of public interest law, specifically focused on the rights of children, for over eleven years as well.

(3) degree of novelty, difficulty of issues involved and time and labor required

While not novel, the court finds that the issues in this case are complex. The size of the class and the nature and scope of the relief are among the factors that contribute to the complexity and difficulty of this case. Additionally, the court recognizes that monitoring and implementation of the Consent Decree has required Plaintiffs' counsel to develop and maintain expertise in a number of highly specialized areas, as well as expend considerable time on this case. (Declaration of Martha Matthews at 4-8.) Where there has been "priority work that delays the lawyer's other legal work," this factor requires "some premium." Johnson, 488 F.2d at 718. The court has adjusted the hourly rate for each attorney based on this finding.

*1335 (4) the results achieved by Plaintiffs in this case

There are no traditional indicia of success for measuring the results achieved by Plaintiffs in this case. Systemic reform is by nature a slow process. In the instant case, Plaintiffs' success in implementing and monitoring the Consent Decree is largely dependent upon Defendant's cooperation. The court notes that Plaintiffs have encountered numerous difficulties in implementing and monitoring this decree, and commends the tenacity and persistence of Plaintiffs' counsel in working towards the goals of the Consent Decree.

(5) nature and length of relationship with client

Mr. Burnim, Mr. Tucker and Ms. Jackson all have a long-standing relationship with this case. Mr. Burnim has been lead counsel in the case since 1988. Mr. Tucker has spent considerable time on the case since 1992. Ms. Jackson was involved in litigating this case and in drafting the Consent Decree.

III. CONCLUSION
The court finds that, based on the factors set forth above, Plaintiffs' counsel is entitled to be reimbursed at the rate of $250 per hour for lead counsel and $175 per hour for secondary counsel. The court reserves judgment on the other issues raised by Plaintiffs' Motion for Attorneys Fees and Costs. Should the parties remain unable to come to an agreement on these matters, they are instructed to move the court to refer the remaining matters to a Magistrate Judge for mediation.

ORDER
It is hereby CONSIDERED and ORDERED that Plaintiffs' counsel is entitled to be reimbursed for activities undertaken through July 1996 at the rate of $250 an hour for lead counsel Mr. Burnim and $175 an hour for secondary counsel Mr. Tucker and Ms. Jackson.
NOTES
[1] The Norman court incorporates the standards articulated by the United States Supreme Court in Pennsylvania v. Delaware Valley Citizens' Council, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987), Pennsylvania v. Delaware Valley Citizens' Council, 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986), City of Riverside v. Rivera, 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986), Blum v. Stenson, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), and Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The Norman court also included the oft-cited standard articulated in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir.1974), in calculating a reasonable fee. See Norman, 836 F.2d at 1298-99.
[2] Decision of the former Fifth Circuit filed prior to October 1, 1981 constitute binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).